**Timothy BOOTH, Plaintiff,**

v.

**Leon KING, et al., Defendants.**

**No. 03–CV–802.**

United States District Court,
E.D. Pennsylvania.

Nov. 29, 2004.

Timothy Booth, Philadelphia, PA, Pro Se.

Jean Y. Durbin, City of Philadelphia Law Dept., Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

### I. INTRODUCTION

Pro se prisoner plaintiff Timothy Booth ("Booth") brings this action under 42 U.S.C. § 1983 against several employees or former employees of the Philadelphia Prison System ("PPS defendants").[1] Booth alleges that while he was at PPS's Curran Fromhold Correctional Facility ("CFCF") and House of Corrections ("HOC"), PPS defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution. The court has subject matter jurisdiction over this case based on the existence of a federal question. Presently before me is PPS defendants' motion for summary judgment on all claims. For the reasons set forth below, PPS defendants' motion is granted in part and denied in part.

### II. BACKGROUND

The following chronology sets forth the alleged events which are the subject of the instant lawsuit.[2]

1. The defendants named in Booth's complaints are Commissioner Leon King, Former Commissioner Costello, Major Peale of CFCF, Major Mercer of CFCF, Sergeant ("Sgt.") Osbourne of CFCF, Sgt. McNally of CFCF, Social Worker Pinston of CFCF, Correctional Officer ("C/O") Brown of CFCF, C/O Jackson of CFCF, C/O Carter of CFCF, Warden Dunleavey of CFCF, Major Brockenburgh of HOC, C/O Worseley of HOC, Sgt. Harris of HOC, C/O Terry of HOC, Hearing Examiner Young of HOC, C/O Morrison of HOC, Lt. Stolle of HOC, Warden Shovlin of HOC, and C/O Wheeler of CFCF.

2. Because defendants move for summary judgment, the facts are set forth in the light most favorable to plaintiff. *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir.1997). Plaintiff Booth is *pro se* and his deposition

A. *Events at CFCF:*

- On August 21, 2002, Booth filed an inmate grievance because his legal mail was opened outside of his presence. Booth states that his legal mail was again opened outside of his presence on August 24, 2002; September 19, 2002; December 21, 2002; and December 28, 2002. (Compl.; Booth Dep. at 7, 26, 44.)

- On or about September 19, 2002, C/O Brown threatened Booth, stating that C/O Jackson would "tamper with" Booth's legal mail. (Booth Dep. at 11.)

- On or about October 15, 2002, Sgt. Osbourne "verbally assaulted" Booth by cursing at him and defaming his character while he was doing an errand for a medical officer. (Booth Dep. at 40–41.)

- On or about October 15, 2002, Ms. Pinston, a social worker, threatened to file a false report against Booth regarding his eligibility for work release. (Booth Dep. at 60–62.)

- For one and a half months from September 2002 to November 2002, C/O Wheeler denied Booth access to the CFCF law library. (Booth Dep. at 27–31.)

- From roughly November 2002 to December 2002, C/O Carter restricted Booth's access to the CFCF law library and harassed Booth over his use of the library. (Booth Dep. at 63–64.)

- On an uncertain date while Booth was at CFCF, Sgt. McNally confiscated Booth's diabetic medicine after a cell shakedown and Booth was without medicine for eight and one-half hours. This occurred shortly after Booth already received an insulin shot. According to Booth, as McNally confiscated the medicine he said, "you don't need all of these, I know

about such things." [3] (Booth Dep. at 17–18.) At the same time, McNally also took Booth's cup and failed to return it or issue a confiscation slip. (Booth Dep. at 17–20.)

- In late December 2002, Booth wrote a letter to Commissioner King threatening to file a civil suit if all the grievances that he had filed since August 21, 2002 were not addressed by January 21, 2003. (Compl.; Booth Dep. at 22, 25–26.)

B. *Events at HOC:*

- On January 2, 2003, Booth was transferred from CFCF to HOC. (Def.'s Mot. for Summ. J. Ex. D.)

- On or about January 6, 2003, Booth filed a grievance with Major Brockenburgh at HOC, reiterating the deadline that he had given to Commissioner King and threatening to file a civil suit. (Compl.; Booth Dep. at 22.)

- On or about January 9, 2003, a few C/Os whose names are not known took kufis (Islamic prayer caps) away from certain prisoners. However, Booth's kufi was not taken at this time. (Booth Dep. at 46.)

- On January 13, 2003, C/Os Morrison and Worseley, under the supervision of Sgt. Harris, conducted a shakedown of Booth's cell. Booth and Sgt. Harris got into a verbal altercation, and Harris allegedly kicked Booth's pajama down the cell block. (Compl.; Booth Dep. at 48–51.) Lt. Stolle issued a misconduct report to Booth due to the cell shakedown. (Def.'s Mot. for Summ. J. Ex. E.) The misconduct report states that Booth told one of the shakedown officers to "watch your back" and the misconduct report

repeats almost all of the allegations contained in his complaint. Because this is a summary judgment motion filed by defendants, I will take the content of Booth's deposition as true.

**3.** According to Booth's complaint, McNally said "Here take this one pack[.][I]t should do, for I know about these things." (Compl.)

was filed for "disrespecting any staff member" and "assaulting any staff member (no contact)." Booth was given 15 days of disciplinary segregation. (Def.'s Mot. for Summ. J. Ex. E.) Booth claims that this was a false misconduct report. (Booth Dep. at 23–24.)

- On January 14, 2003, while Booth was in disciplinary segregation, Booth saw C/O Terry read through some of Booth's legal papers before returning them. (Booth Dep. at 16.) According to Booth, Terry destroyed or confiscated some of Booth's other legal documents, including copies of briefs that an attorney had sent to Booth. (*Id.* at 51–52.) Terry also confiscated or destroyed Booth's prayer book and his kufi. (Compl.; Booth Dep. at 47–48, 51–52; Def.'s Mot. for Summ. J. Ex. G.) Terry also threatened to beat up Booth and to blow up Booth's mother's house if Booth filed suit against him. (Booth Dep. at 16; Def.'s Mot. for Summ. J. Ex. G.) The cell that Booth was placed in during disciplinary segregation had broken windows and was cold. (Booth Dep. at 56.)

- On January 17, 2003, Booth went to a hearing for the misconduct report. The hearing examiner, defendant Young, did not allow Booth to call witnesses when Booth requested it. Young stated that Booth could only have witnesses upon appeal. (Booth Dep. at 53.) Young found Booth guilty of the misconduct. (Def.'s Mot. for Summ. J. Ex. E.)[4]

*C. Booth's claims*

Booth claims that PPS defendants violated his First, Fourth, Eighth, and Fourteenth[5] Amendment rights under the United States Constitution when they tampered with his legal mail, restricted his access to the law library, took his legal briefs, denied him medication, subjected him to unfit living conditions, verbally abused and threatened him, took his property, discriminated against him on the basis of religious belief, retaliated against him, and violated his right to due process. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Attach. E.)

Booth's claims can be grouped and analyzed as (1) violations his right of access to courts under the First and Fourteenth Amendments, (2) cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, (3) unreasonable seizure and deprivation of property without due process of law in violation of the Fourth and Fourteenth Amendments, (4) violations of substantive and procedural due process rights under the Fourteenth Amendments, (5) discrimination on the basis of religion under the First Amendment, and (6) retaliation for filing complaints and grievances.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no

---

4. In one of Booth's filings in this case, Booth alleges that on or about April 2, 2003, C/O Lowell allegedly placed Booth's cell block on lockdown while Lowell tried to determine who was calling for adhan, Islamic prayer. Booth alleges that when he protested this, Lowell placed Booth in segregation for 13 days. ("Deposition for Lowell;" Booth Dep at 36–37.) Lowell is not named as a defendant in Booth's complaint and is not a party to this suit. Therefore, I may not properly consider this claim.

5. Booth also alleges a Sixth Amendment violation. (Pl.'s Resp. to Summ. J. Mot. at 4.) However, the Sixth Amendment applies only to criminal defendants.

genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997).

## IV. DISCUSSION

### A. Right of Access to Courts

■ Booth's claims of restricted access to the law library, that his legal mail was opened outside of his presence, and that his legal documents were destroyed should be analyzed as claims that his right of access to courts under the First and Fourteenth Amendments was violated. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (holding that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or legal assistance); *Bieregu v. Reno,* 59 F.3d 1445 (3d Cir.1995) (holding that a pattern of opening a prisoner's legal mail outside of his presence can be a violation of his constitutional right of access to the courts) (overruled on other grounds by *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

■ Under *Lewis v. Casey,* in order to prevail on an access to courts claim, the plaintiff must show that he suffered "actual injury" due to the interference with his right of access. *See also, Oliver v. Fauver,* 118 F.3d 175 (3d Cir.1997) (holding that interference with prisoner's mail did not violate his right of access to courts without a showing of actual injury). Examples of "actual injury" given in *Lewis* include a court dismissal of a complaint

and an inability to even file a complaint. 518 U.S. at 351, 116 S.Ct. 2174.

In the instant case, even assuming the complete truth of Booth's deposition testimony, Booth has failed to allege or provide any evidence of any actual injury that he suffered due to his restricted access to the CFCF law library, the opening of his legal mail outside of his presence, and the destruction or confiscation of his legal papers. Therefore, PPS defendants' motion for summary judgment as to this claim is granted.

### B. Eighth Amendment Cruel and Unusual Punishment Claims

■ Booth's claims that he was denied his medicine, that the windows in his cell during disciplinary segregation were broken, and that he was verbally threatened and abused are all claims of cruel and unusual punishment under the Eighth Amendment. In *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Court applied a two-prong test for determining whether a prison official violated the Eighth Amendment. The first prong is an objective determination of whether the deprivation is "sufficiently serious" such that the prison official's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." 511 U.S. at 834, 114 S.Ct. 1970. The second prong is a subjective test of whether the prison official has a "sufficiently culpable state of mind," that of "deliberate indifference to inmate health or safety." *Id.*

■ In applying the subjective test to Booth's claim of medical indifference, Booth's claim must fail.[6] Booth has failed to provide any evidence as to the subjec-

---

6. Given that Booth fails to meet the subjective test, there is no need to determine whether the deprivation of medicine for 8.5 hours was

objectively the "denial of the minimal civilized measures of life's necessities."

tive component of his cruel and unusual punishment claim, that McNally had the state of mind of deliberate indifference to inmate health or safety. In fact, Booth's own deposition and complaint show that McNally did not show deliberate indifference. When Sgt. McNally confiscated Booth's pills soon after Booth received an insulin shot, McNally said "you don't need these, I know about these things." (Booth Dep. at 17–18.)[7] This statement, in light of its timing, indicates that McNally did not have a state of mind of "deliberate indifference" to Booth's health. Booth presents no evidence to the contrary.

■■■ Booth alleges that he was in a cell with broken windows while he was in disciplinary segregation for 15 days and this constituted unfit living conditions in violation of the Eighth Amendment. As for the objective test, isolated instances of deficient and uncomfortable conditions of confinement are not sufficiently serious to constitute denial of the minimal civilized measure of life's necessities. *See, e.g., Vargas v. House of Corrections,* 1989 WL 79337, *2 (E.D.Pa. June 29, 1989); *Roach v. Kligman,* 412 F.Supp. 521, 527 (E.D.Pa. 1976) (confinement in "cold and leaky" cell for short period of time does not violate Eighth Amendment); *Morrison v. Clark,* No. 84–4688 (E.D.Pa. Feb. 27, 1985) (confinement in unclean, insect infested cell for two days does not violate eighth amendment); *Coopers v. Owens,* No. 84–1608 (E.D.Pa. Feb. 7, 1985) (sleeping on bare floor of hallway for two days and short confinement in cell with broken windows do not violate eighth amendment). Additionally, as for the subjective test, Booth has failed to present any evidence that defendants were deliberately indifferent to his health while in that cell. Therefore,

Booth's claim that his time in disciplinary segregation constituted cruel and unusual punishment due to the broken windows fails.

■■■ Booth also claims that he suffered cruel and unusual punishment when various PPS defendants verbally abused him and threatened him with false reports, mail tampering, or with violence. However, verbal abuse and threats will not, without some reinforcing act accompanying them, state a constitutional claim. *Maclean v. Secor,* 876 F.Supp. 695 (E.D.Pa. 1995). *See also Murray v. Woodburn,* 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); *Collins v. Cundy,* 603 F.2d 825, 826 (10th Cir.1979) (allegations that sheriff laughed at prisoner and threatened to hang him did not state claim for constitutional violation); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987) (allegations of vulgarity did not state constitutional claim).

In each of the above claims of cruel and unusual punishment, Booth has failed to meet either the objective or subjective test set forth in *Farmer v. Brennan.* Therefore, PPS defendants' motion for summary judgment as to Booth's cruel and unusual punishment claims is granted.

*C. Unreasonable Seizure and Deprivation of Property without Due Process*

■■■ Booth claims that the confiscation of his cup, legal documents, and religious materials constitute violations of his Fourth Amendment right against unrea-

---

7. Booth's complaint seems to indicate that McNally left Booth with one pack of pills when he confiscated Booth's medicine. According to the complaint, McNally stated, "Here take this one pack[.][I]t should do, for I know about these things." (Compl.)

sonable search and seizure and his Fourteenth Amendment right against deprivation of property without due process of law. However, under *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *id.* at 526, 104 S.Ct. 3194, nor does it protect against seizures in a prison cell. *Id.* at 528 n. 8, 104 S.Ct. 3194. There is also no violation of the Fourteenth Amendment for deprivation of property without due process if there exist adequate post-deprivation remedies, which can consist of state tort and common law remedies and even a grievance procedure. *Id.* at 531, 104 S.Ct. 3194.

Because the searches and seizures of Booth's property took place within his prison cell, Booth has no Fourth Amendment claim. Also, given that Booth had access to grievance proceedings and there exist state tort [8] and common law remedies available to him, Booth's claim under the Fourteenth Amendment for deprivation of property without due process also fails. Therefore, in light of *Hudson v. Palmer,* PPS defendants' motion for summary judgment is granted as to Booth's claims of unreasonable seizure and deprivation of property without due process.

### D. Substantive and Procedural Due Process Claims

Booth alleges a general due process claim which PPS defendants treat as a substantive due process claim. Booth's pleadings and deposition also allege a procedural due process claim which PPS defendants do not address in their motion for summary judgment. I find that Booth's substantive and procedural due process claims must fail.

 As for the substantive due process claim, the Supreme Court has held that the "touchstone of due process is the protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In cases where abusive action by a member of the executive branch is alleged, the Court has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citation and internal quotation marks omitted). To generate liability, executive action must be so ill-conceived or malicious that it "shocks the conscience." *Miller v. City of Philadelphia,* 174 F.3d 368, 374 (3d Cir.1999). The exact degree of wrongfulness necessary to reach the "conscience-shocking" level depends upon the circumstances of a particular case. *Id.* at 375. The behavior alleged by Booth— the mail tampering, restriction of law library use, verbal abuse, and confiscation of property and medication—does not rise to the level of "conscience-shocking" behavior and therefore Booth's substantive due process claim is without merit.

 Booth claims that his procedural due process rights were violated when defendant Young did not allow Booth to call any witnesses at his misconduct hearing on January 17, 2003. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that when a liberty interest was at stake the minimum procedure prisoners were due was notice, the

---

**8.** PPS defendants address any potential claim that Booth brings under the Tort Claims Act (Def.'s Mot. for Summ. J. at 18–19.) However, Booth states that he is not bringing any such claim (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4), and therefore I will not address any tort claims.

right to call witnesses, and a written finding of facts. Booth was not afforded the right to call witnesses. However, in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) the Court held that disciplinary segregation for 30 days, absent atypical and significant deprivation, did not implicate constitutional liberty interests. *See also Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir.2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir.2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest). Booth was held in disciplinary segregation for 15 days and he has presented no evidence to indicate that the length or conditions of his confinement were atypical or constituted significant deprivation. Therefore, Booth's due process rights were not violated when he was not permitted to call witnesses on his behalf in his misconduct hearing.

■■■■■ Booth also claims that his due process rights were violated when prison officials failed to respond to his grievances. However, although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment. *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D.Pa.1997), *aff'd*, 142 F.3d 430 (3d Cir.1998); *McGuire v. Forr*, Civ. A. No. 94–6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), *aff'd*, 101 F.3d 691 (3d Cir.1996); *Adams v. Rice*, 40

F.3d 72, 75 (4th Cir.1994), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988). Hence, Booth's claim that his procedural due process rights were violated when PPS defendants failed to respond to his grievances also fails.

## E. Discrimination on the Basis of Religious Belief

■■■■■ Booth alleges that he was discriminated against because he was Muslim. The only incident that Booth alleges in his complaint which potentially could be discriminatory took place on January 9, 2003, when unidentified correctional officers confiscated kufis from Muslim prisoners. However, Booth does not have standing to bring a claim on this incident because his kufi was not taken at that time. (Booth Dep. at 46.) To demonstrate standing, "a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The Supreme Court has applied the doctrine of standing to require a showing of actual injury in some prisoner civil rights cases. *See Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (plaintiff must show actual injury to have standing for a violation of right of access to courts claim). Because Booth's kufi was not confiscated at that time and Booth does not allege any other injury due to this incident, Booth does not have standing to bring a claim of discrimination on the basis of religious belief.

## F. Retaliation

■■■■■ Booth claims that he was transferred from CFCF to HOC in retaliation

for filing grievances and threatening to file a civil lawsuit in December of 2003. Booth also claims that his cell at HOC underwent a shakedown and he was put in disciplinary segregation because he filed a grievance when he arrived at HOC. In order to prevail on a retaliation claim, a prisoner-plaintiff must first prove that "the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001). Next, the plaintiff must show that he suffered some "adverse action" at the hands of prison officials. *Id.* A prisoner-plaintiff satisfies this requirement by demonstrating that the action "was sufficient to deter a person of ordinary firmness from exercising his rights." *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000).

■■■■ Once a prisoner-plaintiff has met these first two threshold tests, he or she must prove "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser,* 241 F.3d at 333. If a prisoner-plaintiff has shown that his exercise of a constitutional right was a "substantial and motivating factor" in the challenged decision, the burden then shifts to defendant prison officials who may still prevail by proving by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Id.* at 334. At the summary judgment stage, the plaintiff need only meet his burden of producing evidence from which a reasonable jury could conclude that the adverse action was taken in retaliation for the exercise of his protected rights. If the plaintiff produces evidence from which a reasonable jury could conclude that the exercise of his right was a "substantial and motivating factor" in defendants' actions, the ultimate question of causation must be decided by the fact-finder.

■■■■ PPS defendants do not dispute that Booth meets the first requirement of a retaliation claim. (Def.'s Mot. for Summ. J. at 9.) Booth alleges that PPS defendants retaliated against him because he filed grievances and because he threatened to sue. The Third Circuit has held that the filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. *Anderson v. Davila,* 125 F.3d 148, 161 (3d Cir.1997); *Milhouse v. Carlson,* 652 F.2d 371, 373–74 (3d Cir.1981). Courts have also held that the filing of grievances is protected under the First Amendment right to petition the government for a redress of grievances. *See, e.g., Allah v. Al–Hafeez,* 208 F.Supp.2d 520 (E.D.Pa.2002); *Rivera v. Chesney,* 1998 WL 639255, *5 (E.D.Pa. Sept.17, 1998); *Quinn v. Cunningham,* 879 F.Supp. 25, 27–28 (E.D.Pa.1995); *Hill v. Blum,* 916 F.Supp. 470, 473–74 (E.D.Pa. 1996). Hence, Booth's conduct was constitutionally protected.

Booth alleges that PPS defendants took the following adverse actions against him: they transferred him from CFCF to HOC, they shook-down his cell at HOC, they confiscated and destroyed his property at HOC, they filed a false misconduct report against him at HOC, and they placed him in disciplinary segregation at HOC. PPS defendants do not dispute that Booth was transferred, that there was a cell shakedown and that Booth was placed in disciplinary segregation. Because a fact-finder could conclude that these actions were "sufficient to deter a person of ordinary firmness from exercising his rights," *Allah v. Seiverling,* 229 F.3d at 225, Booth has presented sufficient evidence of adversity to meet the adverse action requirement at the summary judgment stage.

In order for his retaliation claim to survive summary judgment, Booth must provide evidence of a causal link between his

constitutionally protected conduct and the adverse actions. The Third Circuit has held that "suggestive temporal proximity" is relevant to causation in a retaliation case. *Rauser*, 241 F.3d at 334; *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000) (holding that suggestive timing is relevant to causation in a retaliation case but refusing to find whether timing alone could be sufficient to establish causation at the summary judgment stage).[9] The only evidence that Booth has offered in support of the existence of a causal link is temporal proximity. While in CFCF, Booth wrote a letter to Commissioner King in late December 2002 threatening to file a lawsuit. (Compl.; Booth Dep. at 25–26.) He was transferred to HOC on January 2, 2003. Booth filed a grievance with Major Brockenburgh at HOC on January 6, 2003 (Booth Dep. at 22), and his cell underwent a shakedown and he was placed in disciplinary segregation on January 13, 2003. (Booth Dep. at 48–51; Def.'s Mot. for Summ. J. Ex. E.)

■■■ PPS defendants rebut Booth's contention that his transfer was retaliatory by pointing out that Booth himself, in his grievances, asked for a transfer out of CFCF. (Def.'s Mot. for Summ. J. at 9–10, Ex. G at 6, 15.) Because the copies of Booth's grievances show that he did indeed request to be transferred, PPS defendants' motion for summary judgment on Booth's claim that his transfer was retaliatory is granted.[10]

■■■ However, PPS defendants do not address Booth's claim that the adverse actions which took place at HOC, namely the shakedown of his cell, the confiscation or destruction of his property, the misconduct report, and the disciplinary segregation, were also retaliatory.[11] Because Booth has provided wholly unrebutted evidence of causation in the form of suggestive temporal proximity, this particular retaliation claim cannot be dismissed on summary judgment.

*G. Qualified Immunity*

■■■ PPS defendants argue that they are entitled to qualified immunity. (Def.'s Mot. for Summ. J. at 17–18.) Under *Saucier v. Katz*, 533 U.S. 194, 121

9. PPS defendants cite to *Allah v. Al–Hafeez*, 208 F.Supp.2d, 520, 535 (E.D.Pa.2002) as holding that "temporal proximity alone cannot establish that a plaintiff's protected activity was a substantial motivating factor" of the adverse activity. (Def.'s Mot. for Summ. J. at 10.) However, PPS defendants took this quote out of context. The *Allah v. Al–Hafeez* court was specifically referring to the timing presented in the facts of that case in which the constitutionally protected behavior and the adverse actions were separated by months as opposed to days as in Booth's case.

10. Booth's request for the transfer might also be interpreted to mean that the transfer was not actually an "adverse action" that was "sufficient to deter a person of ordinary firmness from exercising his rights." Either way, Booth has failed to meet the elements of a retaliation claim for his transfer.

11. Because PPS defendants do not address Booth's HOC retaliation claim, they do not present evidence that Booth's grievances and his threat to file lawsuit were not a "substantial and motivating factor" in conducting the cell shakedown and putting Booth in disciplinary segregation. There is some evidence in the record to suggest that PPS defendants acted for reasons reasonably related to penological interests. For example, according to the misconduct report, Booth was given disciplinary segregation because he told one of the shakedown officers to "watch your back" and Booth was charged with "disrespecting any staff member" and "assaulting any staff member (no contact)." (Def.'s Mot. for Summ. J. Ex. E.) Booth states under oath that the misconduct report was false. (Booth Dep. at 23–24.) Such evidence indicates that there are genuine issues of material facts to be resolved at trial.

S.Ct. 2151, 150 L.Ed.2d 272 (2001), a court must engage in a two part-inquiry to determine whether an official is entitled to qualified immunity. First, do the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right? *Id.* at 201, 121 S.Ct. 2151. Second, was the right clearly established? The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [actor] that his conduct was unlawful in the situation to be confronted." *Id.* at 202, 121 S.Ct. 2151. Officials are not entitled to qualified immunity if the response to both of these questions is positive. If a district court applies this two-prong analysis and determines that "qualified immunity should be denied on the ground that material facts are subject to genuine dispute," then the Third Circuit requires the district court "to specify those material facts that are and are not subject to genuine dispute and explain their materiality." *Forbes v. Township of Lower Merion,* 313 F.3d 144, 146 (3d Cir.2002).

Booth successfully meets the first prong of the *Saucier* test because, taking the facts in the light most favorable to him, Booth has alleged a constitutional violation. Booth claims that defendants violated his constitutional rights by retaliating against him for filing grievances and threatening to file a lawsuit. Booth survives summary judgment on his retaliation claim because he has presented evidence, in the form of suggestive temporal proximity, that there was a causal link between his constitutionally protected conduct and the adverse actions taken by PPS defendants at HOC. *Supra* Part IV.F. There exist genuine issues of material facts as to the causation component of Booth's retaliation claim. The facts to be determined at trial include: 1) did Booth file a grievance and threaten to sue while he was at

HOC?; 2) if so, when did Booth file this grievance?; 3) was Booth's grievance a "substantial and motivating factor" in defendants' conducting the cell shakedown, filing a misconduct report, and putting Booth in disciplinary segregation?; 4) if so, would PPS defendants have taken the same action anyway for a reason reasonably related to penological interests for their actions?; 5) did the misconduct report accurately portray Booth's conduct during the cell shakedown?; and 6) was Booth's property confiscated and not returned or destroyed? These facts are material to the causation component of Booth's retaliation claim and to defendants' potential defense that they would have taken the adverse actions anyway even absent Booth's constitutionally protected conduct. These facts must be determined by a trier of fact before the court can conclude whether defendants violated Booth's constitutional rights and whether they are entitled to qualified immunity under the first-prong of the *Saucier* test.

The second-prong of the *Saucier* test requires the court to determine whether Booth's right to file grievances and to threaten lawsuits without suffering retaliation was clearly established. In *Atkinson v. Taylor,* 316 F.3d 257, 269–70 (3d Cir.2003), the Third Circuit held that prison officials were not entitled to qualified immunity from a prisoner's claim that defendants retaliated against him for filing a civil rights suit. The court held that *Milhouse v. Carlson,* 652 F.2d 371 (3d Cir. 1981), "clearly established a prisoner's right to access the courts so that a reasonable prison official would know that he violates this right if he retaliated against a prisoner for filing a lawsuit." *Atkinson,* 316 F.3d at 269. The *Milhouse* court stated that "[t]he right of access to the courts must be 'adequate, effective and meaning-

ful,' ... and must be freely exercisable without hindrance or fear of retaliations." *Milhouse,* 652 F.2d at 374 (internal citations omitted). Thus, the Third Circuit has already determined that the right to be free from retaliation for exercising one's right of access to courts is a clearly established right.

Because there are genuine issues of material fact as to whether PPS defendants violated Booth's constitutional rights and because the constitutional right alleged to be violated was clearly established, PPS defendants' are not entitled to qualified immunity from Booth's retaliation claim regarding the events at HOC.

## V. CONCLUSION

For the reasons set forth above, PPS defendants' motion for summary judgment is granted as to all of Booth's claims except for one. Defendants' motion for summary judgment is denied as to Booth's claim that the events at HOC, namely the cell shakedown, the misconduct report, the disciplinary segregation, and the confiscation and/or destruction of Booth's property, were retaliatory. Booth's claims against defendants Costello, Peale, Mercer, Osbourne, McNally, Pinston, Brown, Jackson, Carter, Dunleavey, and Wheeler are dismissed with prejudice.[12] The remaining defendants in this case are defendants King, Brockenburgh, Worseley, Harris, Terry, Young, Morrison, Stolle, and Shovlin.

### *ORDER*

AND NOW, this 29th day of November 2004, it is **ORDERED** that defendants' motion for summary judgment (Docket # 62) is **GRANTED** in part and **DENIED** in part. All claims against defendants Costello, Peale, Mercer, Osbourne, McNal-

ly, Pinston, Brown, Jackson, Carter, Dunleavey, and Wheeler are **DISMISSED WITH PREJUDICE.** All claims against defendants King, Brockenburgh, Worseley, Harris, Terry, Young, Morrison, Stolle, and Shovlin are dismissed except for plaintiff's claim of retaliation as set forth in the accompanying memorandum.

---

12. These defendants were either employed at CFCF or, in the case of former Commissioner Costello, only employed by PPS while Booth was at CFCF. Because Booth's only valid remaining claim involves events at HOC, these defendants are dismissed.