**Raheem GLENN, Appellant**

v.

**Dr. BARUA, Orthopedic Specialist; Ken Diddle, Physician Assistant; Robert Tretinik, CHCA.**

No. 06–2289.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 21, 2007.

Filed Oct. 30, 2007.

Raheem Glenn, Waynesburg, PA, pro se.

William J. Rogers, David M. McQuiston, Thomson, Rhodes & Cowie, Kathryn M. Kenyon, Bryan K. Shreckengost, Pietragallo, Bosick & Gordon, Samuel H. Foreman, Weber, Gallagher, Simpson, Stapleton, Fires & Newby, Kemal A. Mericli, Office of Attorney General of Pennsylvania, Pittsburgh, PA, for Dr. Barua, et al.

Before: RENDELL, HARDIMAN and COWEN, Circuit Judges.

OPINION

PER CURIAM.

Appellant, Raheem Glenn, proceeding *pro se*, appeals an order of the United States District Court for the Western District of Pennsylvania granting the motions to dismiss filed by the defendants named in his civil rights complaint. For the following reasons, we will vacate the District Court's judgment in part, affirm in part, and remand for further proceedings.

I.

In 2005, Glenn, an inmate at the State Correctional Institution at Greene, filed a complaint in the United States District Court for the Western District of Pennsylvania asserting claims against Dr. Barua, an orthopedic specialist; Ken Diddle, a physician's assistant; and Corrections Health Care Administrator Robert Tretinik. Glenn alleges deliberate indifference to serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment, as well as violations of the First, Fourth, Eleventh, and Fourteenth Amendments.

In relevant part, the complaint alleges the following series of events. On June 5, 2003, Glenn injured his leg after slipping on a rock while playing basketball on prison grounds. That same day, Dr. Barua examined the injury and placed the leg in a cast. X-rays of the afflicted area were taken the following day and revealed that the leg was fractured in two places. Glenn claims that the cast did not properly support the break and that a bone in his leg was "popping back and forth." Compl. ¶ 6. He also claims that he was suffering from continuous pain, headaches, and loss of sleep. On June 16, he visited sick call and was examined by Diddle, who told Glenn that the cast was adequate and that nothing further could be done to alleviate the pain. Diddle also told him that the fractured bone was not moving back and forth and that the sensation "was all in [Glenn]'s mind." *Id.* ¶ 7.

Glenn claims that the pain and discomfort did not subside even though he was taking pain medication three times a day.[1]

---

1. It is unclear from the complaint when Glenn began taking the pain medication and whether any of the defendants were aware that he was doing so.

Glenn submitted additional requests for medical attention, and was again examined by Diddle on June 23. During that visit, Glenn alleges that he was "denied treatment for all his problems" and that Diddle responded to Glenn's entreaties for medical assistance by saying, "that[']s what happens when you get hurt in jail." *Id.* ¶ 11. Tretinik then entered the room and ordered Glenn to leave the medical area or face punishment.

In the meantime, Glenn submitted two grievances in which he complained about the medical care he was receiving. He filed the first grievance immediately following the June 16 sick call visit. This grievance was denied two days later, and the decision was affirmed on appeal by Tretinik. Glenn filed the second grievance after the June 23 sick call visit. This grievance was also denied at the initial review stage, and there is no indication that Glenn appealed that decision.

On July 3, 2003, after undergoing an additional x-ray, Glenn again visited with Dr. Barua, who determined that the fracture had slightly worsened and decided to place a larger cast on the leg. Glenn subsequently underwent x-rays on July 9 and was examined at Dr. Barua's office on the following day. Glenn also visited Dr. Barua at his office on August 7. During that visit, Glenn informed Dr. Barua that the cast was broken because he was forced to walk around in his cell for four days without crutches, and that the broken part of the cast was poking into his leg. After determining that there was "no time or need" to replace the entire cast, Dr. Barua added more material to the broken area of the cast. *Id.* ¶ 21. Dr. Barua also stated "there was nothing he could do about the pain and that [Glenn] should have been able to have his crutches." *Id.* ¶ 20. Dr. Barua did not remove the part of the cast that was poking into Glenn's leg. Glenn also inquired as to why his foot appeared

to be turning to the right, but received no response from Dr. Barua.

Glenn paid another visit to sick call on September 4 and complained to Diddle about the broken cast. Diddle placed his finger into the top part of the cast to feel for blood, even though Glenn told him he would not be able to reach the afflicted area with his finger. Diddle stated that he did not believe that anything was poking into Glenn's leg and then left the examination area. Glenn claims that when Dr. Barua removed the cast on October 2, it was apparent that the broken part of the cast had punctured the leg and that the resulting wound had started to heal around the cast. Prison officials denied Glenn's requests to photograph the wounded area. Glenn believes he has suffered permanent injury as a result of the foregoing treatment. Specifically, he claims that he cannot walk without experiencing pain and that the bones in his leg are misaligned.

The defendants each filed motions to dismiss the complaint for failure to state a claim upon which relief may be granted. The Magistrate Judge assigned to the case issued a Report and Recommendation advising the District Court to dismiss the complaint because it failed to state a valid Eighth Amendment claim. The Magistrate's Report did not address Glenn's other constitutional claims. The District Court adopted the Magistrate's Report and dismissed the complaint in a Memorandum Order entered March 20, 2006. Glenn timely filed a notice of appeal of the District Court's order.

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. Our review of a district court's decision to grant a motion to dismiss is plenary. *Buck v. Hampton Tp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir.2006). "In reviewing a motion to dismiss, we accept all factual allegations in

the complaint as true and view them in the light most favorable to the plaintiff." *Id.* In addition, we must liberally construe Glenn's *pro se* complaint. *Alston v. Parker,* 363 F.3d 229, 234 (3d Cir.2004).

## II.

### Eighth Amendment

Glenn alleges that defendants violated his rights under the Eighth Amendment by not properly diagnosing and treating his leg injuries. In order to state a valid claim under 42 U.S.C. § 1983 based upon constitutionally inadequate medical care, the complaint must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference occurs when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, to successfully state a claim, a plaintiff must allege that the defendant acted with a sufficiently culpable state of mind, *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and must in some way "connect[ ] his factual allegations to the alleged mental state[ ]" of the defendant, *Spruill v. Gillis,* 372 F.3d 218, 237 (3d Cir.2004). Conduct that evidences mere negligence or inadvertence does not amount to deliberate indifference. *See Farmer,* 511 U.S. at 835, 114 S.Ct. 1970. Furthermore, a plaintiff may not establish an Eighth Amendment violation merely by expressing disagreement with a medical defendant's choice of treatment. *See Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987).

■ We disagree with the District Court's determination that Glenn has failed to state facts showing that Dr. Barua provided constitutionally inadequate medical care. We believe that Glenn has sufficiently stated a claim against Dr. Barua based upon his alleged actions at the August 7, 2003 examination. During that visit, Glenn allegedly told Dr. Barua about the pain he was experiencing in his leg as a result of walking around in his cell for four days without crutches. Specifically, he claims that he mentioned to Dr. Barua that part of the cast had broken and was poking into his leg and that he was experiencing pain throughout his leg and ankle. He claims that Dr. Barua did not remove the broken portion of the cast that was causing the irritation and did nothing to alleviate the pain. Glenn suggests that these omissions were deliberate and constituted the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See* Compl. ¶¶ 20, 21, 42, 44. While we agree with the Magistrate Judge that it appears Glenn received vigorous treatment from Dr. Barua in the months following the injury, we must accept as true Glenn's allegations regarding the deliberateness of Dr. Barua's failure to appropriately treat the complications that arose from the broken cast. Accordingly, we construe the complaint as indicating that Glenn had a serious medical need that was not properly addressed during the August 7 examination.

■ None of the other events recounted in the complaint involving Dr. Barua are sufficient to support the charge that he violated the Eighth Amendment. We agree with the Magistrate Judge that these allegations merely reflect Glenn's dissatisfaction and disagreement with the course of treatment provided by Dr. Barua. For instance, Glenn challenges Dr. Barua's decision to place a cast on the leg before conducting an x-ray and avers that such conduct is in itself indicative of deliberate indifference. We reject this claim, since a decision not to use an x-ray or other diagnostic technique is "a classic example of a matter for medical judgment,"

and does not by itself amount to constitutionally deficient treatment. *Estelle*, 429 U.S. at 107, 97 S.Ct. 285. Although Dr. Barua's opinion regarding the adequacy of the cast apparently changed after he reviewed the results of the second x-ray on July 3, 2003, he did not respond to this new information by withholding appropriate treatment. Instead, he promptly replaced the cast with a larger one. We further conclude that Dr. Barua's alleged refusal to allow Glenn to ask questions during the July 9, 2003 examination also does not evidence a constitutional violation, as Glenn does not claim that he had any particular concerns that he needed to share with the doctor during that visit. Nor has Glenn stated a claim against Dr. Barua based on his alleged failure to verbally respond to Glenn's concerns about his foot turning to the right. The complaint indicates that Dr. Barua appropriately addressed this matter by monitoring the fracture and repeatedly adjusting the cast.

■ We next conclude that Glenn has sufficiently stated a claim against Diddle, the physician's assistant who examined Glenn at sick call on several occasions. It appears that Glenn is alleging that Diddle was deliberately unresponsive to his complaints of constant pain during the June 7, June 23, and September 4, 2003 sick call visits. See Compl. ¶¶ 7, 11, 23, 24, 42, 44. Of particular note is Diddle's alleged statement following the June 23 examination, which suggests that he denied treatment on that occasion for punitive, non-medical reasons and consciously disregarded the risk that inaction would cause Glenn prolonged suffering. While discovery may reveal that Diddle properly exercised medical judgment in withholding the requested treatment, such a conclusion is not supported by the facts set forth in the com-

plaint. We therefore conclude that the District Court erroneously dismissed the Eighth Amendment claims against Diddle.

■ Glenn also asserts an Eighth Amendment claim against Tretinik, who is identified in the complaint as an administrator, and not as a physician or physician's assistant. A non-medical prison official is not charged with deliberate indifference for withholding medical care from a prisoner being treated by medical personnel absent "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236. According to the complaint, Tretinik only had reason to know of a single instance of alleged mistreatment, based upon his review of Glenn's administrative appeal of the grievance regarding his June 16, 2003 sick call visit. Once a prison grievance examiner becomes aware of possible mistreatment, the Eighth Amendment does not require him or her to do more than "review[ ] ... [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir.2005) (citing *Spruill*, 372 F.3d at 236).

Tretinik's response to the grievance was appropriate. According to the complaint, Tretinik denied Glenn's appeal "on account of [the number of] days [he went] to sick call after [the] grievance was submitted." Compl. ¶ 14. Indeed, between the time the grievance was filed on June 18 and the time that Tretinik responded to it on July 2, Glenn paid an additional visit to sick call and received a second x-ray. Tretinik's inaction pursuant to the June 16 grievance thus appears to have been properly based on the fact that Glenn was receiving treatment from prison medical personnel.[2] Fi-

**2.** Glenn alleges that Tretinik erroneously stated in his response to the grievance that Glenn

had received proper medical treatment both inside and outside the institution, when in

nally, to the extent that Glenn seeks to hold Tretinik liable under § 1983 for the misconduct of subordinate officials, the complaint fails to state a claim. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (holding that a claim under § 1983 must be based on the defendant's personal involvement in the wrongdoing).

**First Amendment**

▆ Although the factual basis for the First Amendment claim is unclear from the face of the complaint, Glenn clarifies in one of the briefs that he submitted to the District Court that he believes the defendants improperly retaliated against him for exercising his First Amendment rights. Specifically, he argues that Tretinik threatened disciplinary action because Glenn filed grievances criticizing the medical care he was receiving. He also argues that the defendants provided him with inadequate medical care in retaliation for expressing dissatisfaction with the treatment that he was receiving.

An official who retaliates against an inmate for exercising his constitutional rights is subject to liability under § 1983. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir.2003) (internal quotation marks and citations omitted). The prisoner bears the initial burden of showing that the "constitutionally protected conduct was 'a substantial or motivating factor' in the deci-

sion to discipline him." *Rauser,* 241 F.3d at 333–34 (quoting *Mount Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Glenn has arguably engaged in conduct protected by the First Amendment by filing grievances about the medical care he was receiving and by personally complaining to prison officials. *See Booth v. King,* 346 F.Supp.2d 751, 762 (E.D.Pa.2004). However, he does not suggest in his complaint that any of these activities led to adverse action likely to prevent or otherwise discourage a person of ordinary firmness from engaging in the protected conduct. While he alleges that one day at sick call Tretinik entered the examination room and threatened to send him to disciplinary confinement, there is no indication as to what precipitated this alleged threat or whether it was made for the purpose of discouraging him from exercising a constitutional right. And while he also alleges that he was forced to walk around his cell for four days without crutches, he does not state who was responsible for causing him this hardship. Furthermore, we cannot reasonably infer from the allegations in complaint that Glenn's criticisms caused him to receive inadequate medical care. The complaint fails to suggest any nexus between Glenn's expressive conduct and the quality of the treatment he received, and the mere fact that mistakes were made during the course of the treatment is not so extraordinary as to give rise to an inference of retaliatory conduct. *See Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). We therefore conclude that Glenn has failed to state a First Amendment claim.

fact he had not yet been treated outside the prison. Accepting the truth of this discrepancy, it does not make a difference since Glenn was receiving frequent treatment from medi-

cal personnel inside the institution and Tretinik properly deferred to their expertise in rejecting the grievance.

**Other Constitutional Claims**

The factual basis for the Fourteenth Amendment claim is also unclear from the complaint. Glenn clarifies in one of his later filings that he is alleging a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. As Glenn does not claim discrimination based on membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Specifically, he must state facts showing that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir.2006) (citing *Olech*, 528 U.S. at 564, 120 S.Ct. 1073). Because Glenn has failed to identify any other similarly situated individuals who were treated differently, his equal protection claim is meritless. As the complaint does not articulate the bases of the Fourth and Eleventh Amendment claims, we will not address them here.

For the foregoing reasons, we will affirm the District Court's judgment in part, vacate in part, and remand for further proceedings consistent with this opinion.