IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Pitts,                          :
                    Appellant           :
                                        :
            v.                          :
                                        :
Muhammad Naji,                          :
Debra Younkin,                          :
K. Hollibaugh, T. Cantolina,            :
Kenneth Cameron, Steven Glunt           :   No. 2094 C.D. 2015
and Major Morris                        :   Submitted: May 6, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: September 6, 2016


            Anthony Pitts (Pitts) appeals from the Clearfield County Common Pleas
Court's (trial court) September 30, 2015 order dismissing his pro se complaint against
Muhammad Naji (Dr. Naji), Pennsylvania Department of Corrections' (Department)
Health Care Administrator Debra Younkin (Younkin), Department Deputy
Superintendent of Centralized Services K. Hollibaugh[1] (Hollibaugh), Department
Nursing Supervisor Theresa Cantolina (Cantolina), Department Superintendent
Kenneth Cameron, Department Superintendent Steven Glunt and Major Morris[2]
(collectively, Defendants) (Complaint) as frivolous. Pitts presents two issues for this
Court's review: (1) whether the trial court erred when it determined that Pitts'
Complaint was frivolous; and (2) whether the trial court erred when it determined the

            [1] K. Hollibaugh's full name does not appear in the pleadings.
            [2] Major Morris' first name does not appear in the pleadings.

Complaint consisted solely of appeals from internal prison sanctions and/or procedures. After review, we affirm.

Pitts is currently incarcerated at the State Correctional Institution (SCI) at Benner. According to the Complaint, on September 17, 2013, Pitts was transferred from SCI-Fayette to SCI-Houtzdale and placed in the restrictive housing unit (RHU) as a result of his disciplinary custody (DC) status for refusing to have a cellmate (or "double-cell") while in the RHU at SCI-Fayette. While at SCI-Houtzdale, Pitts again refused a cellmate and was issued a misconduct for refusing to obey an order (Misconduct 1) for which he was immediately sanctioned with seven days of activities restriction.[3] On September 19, 2013, Pitts was found guilty of Misconduct 1 and received an additional 45 days of DC time. Pitts appealed from the Misconduct 1 Determination to the Program Review Committee (PRC) that same day. PRC rejected the appeal. *See* Complaint ¶ 12. On September 25, 2013, Pitts again refused a cellmate in the RHU, received another misconduct for refusing to obey an order (Misconduct 2), and was immediately sanctioned with seven days of activities restriction. Misconduct 2 was subsequently dismissed without prejudice. On September 27, 2013, Misconduct 2 was reissued, and Pitts was again immediately sanctioned and placed on activities restriction. On October 1, 2013, Pitts was found guilty of Misconduct 2 and received an additional 30 days of DC time, which was upheld throughout the appeal process. *See* Complaint ¶ 14.

On September 26, 2013, Pitts made a written request to Dr. Naji for pain medication, a cane upon release from RHU, and a sleeve for his injured wrist. On October 11, 2013, Pitts wrote to Younkin seeking treatment for his injured wrist. On October 13, 2013, Pitts made a written inquiry to Counselor Cogan[4] about single-cell

---

[3] According to the Complaint, an activities restriction prohibits showering, shaving, exercising or cell cleaning. *See* Complaint ¶¶ 1, 10, 13, 14, 22, 23, 35, 36, 39, 43, 48, 49, 60.

[4] Counselor Cogan's full name does not appear in the record.

(Z-Code) status which was referred to the psychology department. On October 17, 2013, Pitts wrote to Cantolina asking about treatment for his wrist including the wrist sleeve he previously used at SCI-Fayette. On October 27, 2013, Pitts wrote to Psychiatrist Cleaver[5] requesting an evaluation for a Z-Code status. On October 30, 2013, Pitts wrote to Dr. Naji soliciting a diabetic snack bag, and treatment for a hernia, a rash, an injured wrist and arthritic knees, which was denied. On November 2, 2013, Pitts also petitioned the physician's assistant[6] for a diabetic snack bag, and treatment for a hernia, a rash, an injured wrist and arthritic knees.

On November 12, 2013, Pitts received another misconduct (Misconduct 3) for failing to obey an order to double-cell while in the RHU. Pitts was again immediately sanctioned to seven days activities restriction. On November 21, 2013, Misconduct 3 was dismissed without prejudice. On November 14, 2013, Pitts filed a grievance to address the September 17, September 25 and November 12, 2013 activities restrictions. Major Morris denied the grievance. *See* Complaint ¶ 23.

On December 14, 2013, Pitts submitted a sick call slip seeking treatment by a dentist and by Dr. Naji for arthritic knee and hernia treatment. On December 17, 2013, Pitts was granted temporary use of a wheelchair, which Dr. Naji thereafter rescinded. On December 30, 2013, Pitts was placed in the infirmary due to knee pain complaints. When Pitts was discharged from the infirmary on January 2, 2014, Dr. Naji notified him that he would not receive a wheelchair. Pitts complained, and was issued a misconduct (Misconduct 4) from Corrections Officer Owens[7] that resulted in 45 days of DC time. All appeals therefrom were denied. *See* Complaint ¶ 27.

On January 4, 2014, Pitts wrote to Department Deputy Superintendent David J. Close (Close) requesting intervention with respect to receiving proper

---

[5] Psychiatrist Cleaver's full name does not appear in the record.
[6] There was no name on the request, only the title "physician's assistant." Complaint at Ex. C-8.
[7] Corrections Officer Owens' first name does not appear in the pleadings.

medical care from Dr. Naji. On January 12, 2014, Pitts submitted a sick call slip for an appointment with an orthopedic doctor. On January 13, 2014, Pitts wrote to Younkin pursuing treatment for his knees, a consultation with an orthopedic doctor, a wheelchair, and intervention with Dr. Naji. On January 16, 2014, Pitts wrote another request to Younkin seeking treatment for his osteoarthritis. Hollibaugh responded: "All medical consults are at the discretion of the medical director. I do not have the authority to order this." Complaint ¶ 31 (quoting Ex. C-14).

On January 17, 2014, Pitts filed a grievance to address Dr. Naji's failure to provide him proper medical treatment, the resultant pain and the denial of a wheelchair (Grievance 1). On January 22, 2014, Pitts filed another grievance to address Younkin's and Dr. Naji's refusal to properly treat him for his osteoarthritis, including their failure to provide him with a cane, walker or wheelchair (Grievance 2). On January 30, 2014, Pitts wrote to the PRC concerning Dr. Naji's refusal to provide him with a cane, walker, crutches or a wheel chair. Hollibaugh answered: "This decision was made by a Certified, Licensed Medical Professional. I am not qualified to override this decision." Complaint ¶ 34 (quoting Ex. C-15).

On January 30, 2014, Pitts received another misconduct (Misconduct 5) for refusing to obey an order, and was immediately placed under activities restriction for seven days. Misconduct 5 was eventually dismissed without prejudice. On January 31, 2014, Pitts filed another grievance to address the imposition of the activities restriction without due process (Grievance 3).

On February 4, 2014, Younkin provided the initial review response to Grievance 1, which stated: "Pitts was evaluated by Dr. Naji on [December 12, 2013]. Dr. Naji documented [that] there was no need for an assisted device. . . . Grievance denied." Complaint ¶ 37 (quoting Ex. B-10). All of Pitts' related appeals were denied. *See* Complaint ¶ 37. Additionally, on February 4, 2014, Pitts received an initial review response to Grievance 2, which the Department Nurse Supervisor Janet

4

Pearson (Pearson) denied. All of Pitts' resultant appeals were denied. *See* Complaint ¶ 38. Also on February 4, 2014, Pitts received a misconduct for refusing to obey an order (Misconduct 6) and was immediately sanctioned with seven days activities restriction. Misconduct 6 was ultimately dismissed without prejudice. Finally, on February 4, 2014, Pitts filed a complaint against Dr. Naji with the State Department's Professional Compliance Office, Bureau of Licensing.

On February 12, 2014, Misconducts 3 and 6 were reissued due to Pitts' refusal to leave the RHU. Pitts argued that he could not leave the RHU without a wheelchair. Pitts was found guilty relative to Misconducts 3 and 6, received 90 days of DC time and all the appeals that followed were denied. *See* Complaint ¶ 41. On February 19, 2014, Pitts was issued two knee braces for his osteoarthritis.

On February 20, 2014, Major Morris provided the initial review response to Grievance 3 which stated:

> DC-709[8] is an official inmate restriction procedure that the facility is authorized to implement, (without due process), due to specific behaviors you are displaying.[] [] In conclusion, your grievance is denied because the DC-709 was initiated due to your behavior in accordance with confidential 6.5.1 procedures.[9] You are due no relief.

Complaint ¶ 43 (quoting Ex. B-24). All of Pitts' related appeals were thereafter denied. *See* Complaint ¶ 43.

On February 23, 2014, Pitts filed an Inmate Disability Accommodation Request form with Younkin for an appointment with an orthopedist for an MRI and

---

[8] The pleadings do not contain a copy of DC-709. Our research did not reveal any Department document entitled "DC-709."

[9] "Confidential procedures . . . are not public information and may not be released in its entirety or in part, without the approval of the Secretary of Corrections/designee. Confidential procedures may be released to any Department . . . employee on an as needed basis." DC-ADM 802 VII(A) (2).

5

proper diagnosis and treatment for his knee pain. On March 5, 2014, Pitts received another misconduct for refusing to obey an order to double-cell (Misconduct 7), and was immediately sanctioned with seven days of activities restriction. Pitts received 30 days of DC time for this offense and his appeals were denied. *See* Complaint ¶ 48. On March 6, 2014, Pitts filed a grievance to address the imposition of sanctions without due process (Grievance 4). On March 13, 2014, Pitts wrote to Pearson inquiring whether he would receive a walker upon his release from RHU. Pearson responded that he would.

On April 1, 2014, Major Morris provided an initial review response to Grievance 4 stating: "DC-709 is an official inmate restriction procedure that the facility is authorized to implement due to specific behavior(s) you are displaying. . . . In conclusion, your grievance is denied because the DC-709 was initiated due to your behavior in accordance with confidential 6.5.1 procedures. You are due no relief." Complaint ¶ 54 (quoting Ex. B-31). All appeals from Grievance 4 were denied. *See* Complaint ¶ 54. On March 2, 2015, Pitts received a letter from the Commonwealth of Pennsylvania, Office of General Counsel, Bureau of Professional and Occupational Affairs notifying Pitts that his request for review of his complaint against Dr. Naji had been completed, and the case did not warrant formal prosecution.

On September 7, 2015, Pitts filed his Complaint with the trial court seeking compensatory damages in the amount of $100,000.00, nominal damages in the amount of $1.00 and punitive damages in the amount of $500,000.00 for Defendants' violations of the Sixth, Eighth and Fourteenth Amendments to the United States (U.S.) Constitution, Article 1, Sections 1 and 13 of the Pennsylvania Constitution, and Sections 91.2 and 93.10 of the Department's Regulations.[10] Pitts is also pursuing the same damages from the Department of Corrections (Department)[11]

---

[10] 37 Pa. Code §§ 91.2, 93.10.

[11] Pitts did not name the Department as a party in the Complaint.

for violations of Section 12132 of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (relating to discrimination by reason of disability). *See* Complaint ¶ 62. In addition, Pitts filed with the trial court an Application for Leave to Proceed in Forma Pauperis in conjunction with his Complaint. On September 30, 2015, the trial court dismissed the Complaint with prejudice as frivolous. Pitts appealed to this Court.[12]

### Frivolous Claims

Pitts first argues that the trial court erred when it determined that his Complaint was frivolous. We disagree. Pennsylvania Rule of Civil Procedure No. 240(j)(1) provides in pertinent part:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.
>
> > *Note:* A frivolous action or proceeding has been defined as one that 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, [326] . . . (1989).

Pa.R.C.P. No. 240(j)(1). In his Complaint, Pitts asserts a Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 (Section 1983) claim, an ADA action, and an intentional tort claim. Complaint ¶ 1. Pitts also alleges that he was denied proper medical care while housed at SCI-Houtzdale which constituted "intention[al]

---

[12] "Our scope of review is limited to determining whether constitutional rights have been violated, whether the trial court abused its discretion, or whether the trial court committed an error of law." *Lichtman v. Glazer,* 111 A.3d 1225, 1227 n.4 (Pa. Cmwlth. 2015).

infliction of pain without justification and was a violation of the [ADA] and [Pitts'] Eighth Amendment rights as well." Complaint ¶ 2.

## Section 1983 Claim

In order "[t]o plead [a Section] 1983 claim[], [Pitts] must allege: (1) [Defendants] deprived [him] of a federal right; and (2) [Defendants] denied the right while acting under the color of law." *Uniontown Newspapers, Inc. v. Roberts*, 839 A.2d 185, 196 (Pa. 2003). Specifically, Pitts contends that Defendants' repeated placement of him on activities restriction without a hearing deprived him of his due process rights, and violated Sections 91.2 and 93.10 of the Department's Regulations and his Eighth Amendment right not to be subjected to cruel and unusual punishment.

Notably, all of Pitts' disciplinary sanctions were the result of his refusals to obey orders to double-cell. "[I]t is entirely a matter of the Department's discretion where to house an inmate. Under [Section 93.11 of] the Department's [R]egulation[s], an 'inmate does not have a right to be housed in a particular facility or in a particular area within a facility.' 37 Pa. Code § 93.11." *Clark v. Beard,* 918 A.2d 155, 160 (Pa. Cmwlth. 2007).

Section 91.2 of the Department's Regulations provides: "It is the goal of the Department to operate its institutions and programs to provide protection to the community, a safe and humane environment and opportunities for rehabilitation for the inmates." 37 Pa. Code § 91.2. Section 93.10(b) of the Department's Regulations provides:

> Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:
>
> (1) Written notice of charges.

(2) Hearing before an impartial hearing examiner **or an informal resolution process for charges specified by the Department in the** *Department*[*'s*] *Inmate Handbook* [**(Inmate Handbook)**]*,* or any Department document that is disseminated to inmates. The informal resolution process is described in DC-ADM 801--Inmate Discipline. The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.

(3) Opportunity for the inmate to tell his story and to present relevant evidence.

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.

(6) Opportunities to appeal the misconduct decision in accordance with procedures in the [*Inmate Handbook*]*.*

37 Pa. Code § 93.10(b) (emphasis added).

Pursuant to the Inmate Handbook, a hearing is only required for Class I Charges 1 through 34. Inmate Handbook Section VIII(D), DC-ADM 801.[13] Refusing to obey an order is designated as a Class I Misconduct Charge 35. *Id.* Class I Charges 35 through 45 and Class II Charges are eligible for Informal Resolution, including:

1. No action;

2. Reprimand and/or warning;

3. Refer[ral] to Hearing Examiner for a formal misconduct hearing;

4. **Up to seven days cell restriction**;

---

[13] *See Bush v. Veach,* 1 A.3d 981, 984 n.3 (Pa. Cmwlth. 2010) ("We take judicial notice of the Inmate Handbook, which appears on the [Department's] official website at http://www.cor.state.pa.us/portal/server.pt/community/department_of_corrections/4604.")

5. **Up to seven days loss of specific privileges (e.g., telephone, yard, day room, etc.)**;

6. One week loss of commissary; and/or

7. Assignment of additional work duties for which you will not be paid; and/or payment for damaged/destroyed state property, for which you agree to pay. If you do not agree, the matter will be forwarded for a formal hearing.

*Id.* (emphasis added). Because Pitts' Class I Misconduct charges were all subject to Informal Resolution, no hearing was required before his activities were restricted.

More importantly,

[p]rocedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin v. Conner,* 515 U.S. 472, 484, . . . (1995). Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.' *Id.*

*Brown v. Blaine,* 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003). "Further, an inmate does not have a viable claim under [Section 1983] based solely on a prison official's failure to adhere to a regulation, directive or policy statement." *Yount v. Dep't of Corr.,* 886 A.2d 1163, 1169 (Pa. Cmwlth. 2005). Because seven days of activities restriction is not an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life, we conclude Pitts' Section 1983 claim has no arguable basis in law or fact. *See Clark.* Accordingly, the trial court properly dismissed Pitts' Section 1983 claim as frivolous.

### ADA Action

In order to prevail on a claim for a violation of Title II of the ADA, a plaintiff must show that: (1) he is a qualified

10

individual with a disability; (2) he was either excluded from or otherwise denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability.

Under the ADA, the term 'disability,' with respect to an individual, means 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual.' [Section 12102(2)(A) of the ADA,] 42 U.S.C. § 12102(2)(A). Merely having an impairment does not qualify a person as suffering from a 'disability' under the ADA. The ADA regulations define 'major life activities' as including such functions as 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' [Section 29 of the ADA Regulations,] 29 C.F.R. § 1630.2(i)[.]

*Kenneth S. Hantman, Inc. v. Office of Unemployment Comp. Tax Servs.,* 928 A.2d 448, 452-53 (Pa. Cmwlth. 2007) (citations omitted). Because the Complaint contains no averments which would support that Pitts is a qualified individual with a disability, much less that he was discriminated against therefor, his ADA action has no arguable basis in law or fact.[14] Accordingly, the trial court properly dismissed the ADA action as frivolous.

---

[14] Pitts attached two documents to his brief that are not part of the certified record. It is well-established that:

An appellate court is limited to considering only those facts that have been duly certified in the record on appeal. For purposes of appellate review, that which is not part of the certified record does not exist. Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the certified record.

*B.K. v. Dep't of Pub. Welfare,* 36 A.3d 649, 657-58 (Pa. Cmwlth. 2012) (citations omitted) (quoting *Salameh v. Spossey*, 731 A.2d 649, 658 (Pa. Cmwlth. 1999)).

11

**Intentional Tort Claim**

> [A]n employee of a Commonwealth agency is immune from suit when the employee is acting within the scope of his or her employment and the claim against the employee does not fit into any category in which sovereign immunity has been waived. In his complaint, [Pitts] averred that the [e]mployees violated his constitutional rights and committed numerous intentional torts against him. He did not, however, allege that the [e]mployees acted outside the scope of their employment; nor did he assert that the actions of the [e]mployees fit into any of the exceptions to sovereign immunity listed in Section 8522(b) of the [Judicial] Code, 42 Pa.C.S. § 8522(b). Therefore, since [Pitts] did not aver that the [e]mployees were acting outside the scope of their duties when he was allegedly harmed, and since [Pitts] did not aver that the [e]mployees' actions were within any exception to sovereign immunity, we conclude that the trial court correctly determined [Pitts' Complaint lacked an arguable basis in law and fact].

*Bronson v. Lechward*, 624 A.2d 799, 801-02 (Pa. Cmwlth. 1993) (citation omitted). Because Pitts' intentional tort claims have no arguable basis in law or fact, the trial court properly dismissed them as frivolous.

**Intentional Infliction of Pain Without Justification Claim**

> The United States Supreme Court held in *Estelle v. Gamble,* 429 U.S. 97 . . . (1976), that 'deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.' *Id.* at 104 . . . (internal citations omitted). The Court clarified that claims of negligent diagnosis or treatment, disagreement as to the course of treatment, and medical malpractice do not rise to the level of a constitutional violation merely because the patient is a prisoner. *Id.* at 106 . . . . Rather, '[**i**]**n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend the 'evolving standards of decency' in violation of the Eighth Amendment**.' *Id.*

12

Whether the medical need of an inmate is sufficiently serious to constitute an injury amounting to cruel and unusual punishment is an objective inquiry. *Id.* at 106–107 . . . ; *Farmer v. Brennan,* 511 U.S. 825, 834 . . . (1994). Common factors relied upon by the courts to determine if a medical need is sufficiently serious to fall within the ambit of the Eighth Amendment include whether the medical need is: (i) one that has been diagnosed by a physician as requiring treatment; (ii) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention; (iii) one where denial or delay of treatment causes an inmate to suffer a life-long handicap or permanent loss; (iv) one where denial or delay of treatment results in unnecessary and wanton infliction of pain; (v) one that significantly affects an individual's daily activities; or (vi) one that causes chronic and substantial pain.

. . . .

In addition to satisfying the objective component of an Eighth Amendment claim, **a prisoner must also allege acts or omissions that evidence deliberate indifference on the part of prison officials in order to state a cognizable claim that the prisoner's constitutional right to be free from cruel and unusual punishment has been violated**. In [*Farmer*]*,* the Supreme Court concluded that the inquiry into whether a prison official was deliberately indifferent is a subjective one, requiring the demonstration of a state of mind akin to criminal recklessness, and held that a prisoner must establish that: (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference. The Court also emphasized that the duty of a prison official under the Eighth Amendment is to ensure reasonable safety and that prison officials who respond reasonably to the alleged risk cannot be found liable under the Eighth Amendment, even where the measures taken by prison officials failed to abate the substantial risk. Examples of circumstances where a prison official has been found to act with deliberate indifference include where the prison official: (i) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (ii) delays necessary medical treatment based on a non-medical

reason; (iii) prevents a prisoner from receiving needed or recommended medical treatment; or (iv) persists in a particular course of treatment in the face of resultant pain and risk of permanent injury.

*Tindell v. Dep't of Corr.,* 87 A.3d 1029, 1038-40 (Pa. Cmwlth. 2014) (citations and footnote omitted; emphasis added).

The question before this Court is whether Pitts has pled facts that, if proven, would satisfy the elements necessary to state a cognizable claim for violation of the ban on cruel and unusual punishment due to the denial of medical care, thus establishing an action with an arguable basis in law and fact. Pitts has failed to do so. In his Complaint, Pitts lists numerous requests for treatment and devices associated with his ailments, but he fails to allege acts taken or omitted by the named Defendants that have caused a constitutional deprivation. The majority of Pitts' averments speak in general terms, such as describing the pain in his knees, a need for a wheelchair, and denial of his requests, and fail to identify the requisite harm Pitts suffered. Because Pitts' intentional infliction of pain without justification claim has no arguable basis in law or fact, the trial court properly dismissed it as frivolous.

## Internal Prison Sanctions/Procedures

Pitts next contends that the trial court improperly determined that his Complaint consisted solely of appeals from internal prison sanctions and/or procedures. We disagree. Over half of the allegations in the Complaint's "Statement of Claims" refer to misconducts Pitts received, grievances he filed and responses he received thereto. All of these matters were resolved pursuant to Department procedures, including Pitts' appeals therefrom. Complaint at 3; *see also* Complaint ¶¶ 9-55.

Our Supreme Court held:

> [I]nternal prison operations are more properly left to the legislative and executive branches, and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference. We agree. Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration and the 'full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding . . . .' *Robson* [*v. Biester*], 420 A.2d [9,] 12 [(Pa. Cmwlth. 1980)] (citing *Wolff v. McDonnell,* 418 U.S. 539 . . . (1974)).

*Weaver v. Dep't of Corr.,* 829 A.2d 750, 751 (Pa. Cmwlth. 2003) (citation omitted) (quoting *Bronson v. Cent. Office Review Comm.,* 721 A.2d 357, 358-59 (Pa. 1998)).

Here, the trial court opined:

> [Pitts'] claims that certain named Defendants permitted numerous sanctions for misconduct to be imposed upon him. It appears that [Pitts] appealed these misconduct sanctions through the appropriate channels within the prison system, however, he was dissatisfied with the outcome of his appeals. Though he was dissatisfied with the outcome of his appeals, the [trial c]ourt does not find that [Pitts] averred anything that would form the basis of a cognizable cause of action even when viewed in a light most favorable to [Pitts] and making all reasonable inferences in his favor.

Trial Ct. Op. at 2. Thus, we discern no error in the trial court's conclusion.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Pitts,                   :
                Appellant      :
                                 :
           v.                     :
                                 :
Muhammad Naji,             :
Debra Younkin,              :
K. Hollibaugh, T. Cantolina,    :
Kenneth Cameron, Steven Glunt   :     No. 2094 C.D. 2015
and Major Morris           :

### O R D E R

AND NOW, this 6th day of September, 2016, the Clearfield County Common Pleas Court's September 30, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge