**Peter T. BUSH, Appellant**

v.

**C.O. VEACH, Unit Manager Griffin, C.O. Boganski, Mr. Kerestes, Ms. Stanitis and Major Derfler.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 28, 2010.
Decided July 23, 2010.

---

Peter T. Bush, appellant, pro se.

Maria G. Macus–Bryan, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for appellees.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Peter T. Bush (Bush) appeals from the November 12, 2009, order of the Court of Common Pleas of Schuylkill County (trial court), which sustained the preliminary objections of Corrections Officer (C.O.) Veach, Unit Manager Griffin, C.O. Boganski, Superintendent Kerestes, Food Service Manager Stanitis and Major Derfler (collectively, Appellees) and dismissed Bush's complaint against Appellees. We affirm in part and reverse in part.

Bush is an inmate at the State Correctional Institution at Mahanoy (SCI–Mahanoy), and Appellees are employees at the prison. Bush filed a complaint in the trial court against Appellees, alleging that: (1) Griffin and Stanitis violated Bush's due process rights by taking away his prison job as a sanction for a Class II misconduct; (2) all Appellees, except Superintendent Kerestes, violated Bush's First Amendment right of access to the courts by retaliating against him for filing grievances; and (3) Superintendent Kerestes violated Bush's First Amendment right by failing to stop the actions of the other Appellees. The retaliatory acts included searching Bush's cell and mail, denying his request to move to another cell because he and his cellmate were not compatible, using abu-

sive language and moving him from one unit to another. Bush sought damages from Appellees in an amount to be determined by a jury.

■■■ Appellees filed preliminary objections in the nature of a demurrer. After considering the issues, the trial court concluded that: (1) Bush failed to state a due process claim against Appellees for taking away his prison job because Bush did not have a property right in his prison job; (2) Bush did not state a retaliation claim for the filing of grievances because filing grievances does not invoke a constitutionally protected right; and (3) Bush could not bring a civil rights claim against Kerestes based on a theory of *respondeat superior* for his failure to stop the retaliatory acts of those he supervised. Bush now appeals to this court.[1]

## I. Due Process

■■ Bush first argues that the trial court erred in determining that he had no property right in his prison job. We disagree. In *Miles v. Wiser*, 847 A.2d 237 (Pa.Cmwlth.), *appeal denied*, 581 Pa. 702, 864 A.2d 1206 (2004) (citing *Bryan v. Werner*, 516 F.2d 233 (3d Cir.1975)), this court stated that an inmate has no property right in keeping a prison job.

■■■ Bush also argues that he was denied the process that is set forth in the regulation at 37 Pa.Code § 93.10. We agree.[2]

Bush lost his prison job as a sanction for a Class II misconduct. Under 37 Pa.Code § 93.10(a)(2)(v), inmates found guilty of Class II misconducts may be removed from a prison job as a sanction for the misconduct. However, before prison officials can impose any sanction, they must follow the procedure set forth in subsection (b) of the regulation. The procedure includes: (1) written notice of the charges; (2) a hearing before an impartial hearing examiner or, at the option of the inmate, **an informal resolution process for charges specified in the Department of Corrections Inmate Handbook** (Inmate Handbook);[3] (3) an opportunity for the inmate to tell his story and present relevant evidence; (4) assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively; (5) a written statement of the decision and reasoning of the hearing body based upon the preponderance of the evidence; and (6) an opportunity to appeal the decision in accordance with the Inmate Handbook. 37 Pa.Code § 93.10(b).

Bush alleged that he worked in the kitchen, and, on December 23, 2008, he was caught taking unauthorized food, viz., four ice cream sandwiches, from the kitch-

---

1. Our scope of review of a trial court order sustaining preliminary objections in the nature of a demurrer is whether the law states with certainty that no recovery is possible under the facts alleged. *Brown v. Blaine*, 833 A.2d 1166 (Pa.Cmwlth.2003). We accept as true all well-pled allegations of material fact in the complaint as well as inferences reasonably deduced from them. *Id.* Any doubt should be resolved in favor of overruling the demurrer. *Id.*

2. We note that the dismissal of Bush's complaint would be improper if any theory of law will support the claims raised in the com-

plaint. *Department of the Auditor General v. State Employees' Retirement System*, 836 A.2d 1053 (Pa.Cmwlth.2003).

3. We take judicial notice of the Inmate Handbook, which appears on the Department of Corrections official website at http://www.cor.state.pa.us/portal/server.pt/community/department_of_corrections/4604. *See Figueroa v. Pennsylvania Board of Probation and Parole*, 900 A.2d 949 (Pa.Cmwlth.2006) (taking judicial notice of information found on the Department of Corrections website).

en. Three hours later, after returning to his housing unit, Bush was informed orally by a corrections officer that he had been charged with a misconduct. Taking unauthorized food from the kitchen is a Class II misconduct, eligible for the informal resolution process. Less than twenty-four hours later, Bush was called to the desk on the housing unit for an informal hearing with Unit Manager Griffin. Griffin informed Bush that he was charged with a misconduct for the kitchen incident, and, as a sanction, Griffin "was going to take [his kitchen] job." (Complaint, ¶¶ 83–84.)

Clearly, then, Bush did not receive written notice, a hearing before an impartial hearing examiner, an opportunity to present relevant evidence and receive assistance, a written decision with reasoning or an opportunity to appeal. Rather, Bush went through the informal resolution process set forth in the Inmate Handbook. That process requires the Unit Manager and at least one other member of the Unit Management Team to meet with the inmate for disposition of the charges.[4] The Unit Manager may impose the following sanctions: (1) no action; (2) reprimand and/or warning; (3) referral to a Hearing Examiner for a formal misconduct hearing; (4) up to seven days cell restriction; (5) up to seven days loss of specific privileges; (6) one week loss of commissary; and/or (7) assignment of additional work duties for which the inmate will not be paid and/or payment for damaged or destroyed

state property. (Inmate Handbook, § VIII(D).)

Thus, according to the process set forth in the Inmate Handbook, Unit Manager Griffin could only remove Bush from his prison job for up to seven days. In order to permanently remove Bush, prison officials had to dispose of Bush's Class II misconduct pursuant to the formal hearing process. Because that was not the case, Bush has stated a cause of action for a violation of the process set forth in 37 Pa.Code § 93.10.

Accordingly, we reverse the trial court on this issue.

## II. Retaliation

 Bush next argues that the trial court erred in determining that the filing of grievances does not invoke a constitutionally protected right. Bush is correct in this regard. In *Brown v. Blaine*, 833 A.2d 1166 (Pa.Cmwlth.2003) (citing *Mitchell v. Horn*, 318 F.3d 523 (3d Cir.2003)), this court held that a prisoner who alleges retaliation by prison employees for the filing of grievances has invoked the First Amendment right of access to the courts.[5]

Accordingly, we reverse the trial court on this issue.

## III. *Respondeat Superior*

Finally, Bush argues that the trial court erred in concluding that the Superinten-

4. The staff member reporting the inmate's misconduct is not required to attend the meeting, and there are no witnesses or inmate assistance. (Inmate Handbook, § VIII(D).)

5. To state a retaliation claim, Bush needed to allege that he engaged in constitutionally protected conduct, that prison officials took adverse action and that the protected conduct was a substantial or motivating factor for the action. *Yount v. Department of Corrections*, 600 Pa. 418, 966 A.2d 1115 (2009). Adverse action is one which is sufficient to deter a

person of ordinary firmness from exercising his constitutional rights. *Id.* Where a plaintiff advances a colorable, but not necessarily incontrovertible, argument that he was subjected to adverse action, the issue is best resolved by a fact finder. *Id.* Here, Bush alleges that he was specifically warned to stop filing grievances if he wanted the cell searches to stop; after that warning, Bush was afraid to file further grievances. (Complaint, ¶ 71.)

dent, Kerestes, was not legally responsible for the retaliatory acts of the staff that he supervises. We disagree.

 In *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988), the federal court stated that a defendant in a civil rights action must have personal involvement in the alleged wrongs and that liability cannot be predicated on the operation of *respondeat superior*. The court explained that personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence, but the allegations must be made with appropriate particularity. *Id.*

Bush asserts that Superintendent Kerestes had actual knowledge of the retaliatory acts because Bush appealed the denials of his grievances, which alleged retaliation, to the Superintendent. Bush also claims that, in denying the appeals, Kerestes acquiesced in the retaliation. However, Bush is not correct in suggesting that the Superintendent had actual knowledge of the retaliation merely by reviewing Bush's grievances. Instead, the Superintendent knew only that Bush alleged acts of retaliation.

Accordingly, we affirm the trial court on this issue.

### ORDER

AND NOW, this 23rd day of July, 2010, the order of the Court of Common Pleas of Schuylkill County (trial court), dated November 12, 2009, is reversed to the extent the trial court concluded that the complaint filed by Peter T. Bush fails to state a claim for retaliation and a violation of his right to the process set forth in 37 Pa. Code § 93.10. The order is affirmed in all other respects.

---

1. The Inmate Handbook (2009 ed.), appears on the Department of Corrections' official website, *available at* http://www.cor.state.pa.us/portal/server.pt/community/ department_of_corrections/4604.

### DISSENTING OPINION BY Judge SIMPSON.

Because I would affirm the decision of the Court of Common Pleas of Schuylkill County (trial court) which sustained preliminary objections to the complaint filed by inmate Peter T. Bush (Inmate), representing himself, I respectfully dissent. In particular, I disagree with two aspects of the majority opinion: 1) that Inmate stated a claim for violation of procedural due process when his prison job was taken away; and, 2) that Inmate stated a claim for retaliation for filing grievances.

### 1. Due Process

The majority concludes that even though Inmate has no property interest in his prison job, he nevertheless stated a claim for deprivation of due process because he did not receive the process due under the Inmate Handbook.[1] I disagree with this resolution for two reasons.

First, I disagree with the conclusion of the majority that the Inmate Handbook, which is neither cited by Inmate nor discussed by the respected trial court, promises more process than Inmate received. The majority relies on Section VIII(D) of the Inmate Handbook. This provision deals generally with rules for misconducts, and it includes a sanction of up to seven days loss of "specific privileges." *Id.* However, the specific privileges which can be lost for up to seven days are enumerated elsewhere in the provision, and they do *not* include prison jobs.[2] Thus, this provision is inapplicable to Inmate's claim.

Instead, the loss of a prison job is addressed in a different part of the Inmate Handbook, Section XI. Subsection E(2)

---

2. "Privileges include television, radio, telephone, and commissary for up to 180 days, visiting suspension or restriction for up to 60 days, yard and blockout." Inmate Handbook, § VIII(D) at 38.

specifically relates to work assignments, and it allows removal "from a work assignment by a Unit Management Team action or misconduct proceeding." *Id.* at 48. This provision controls the loss of a prison job for misconduct, and the procedure described by Inmate here conformed to this provision in the Inmate Handbook. Under this provision of the Inmate Handbook, Inmate received the process due.

Second, and more broadly, the Inmate Handbook provisions relating to prison jobs do not create rights which can be enforced in courts. Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. *Brown v. Blaine,* 833 A.2d 1166 (Pa. Cmwlth.2003) (Pellegrini, J.). For a prisoner, such a deprivation occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.* at 1172 (*quoting Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)); *see also Weaver v. Dep't of Corr.,* 829 A.2d 750 (Pa.Cmwlth.2003) (holding prison regulation which did not impose atypical and significant hardship did not create enforceable right). Lesser restraints on a prisoner's freedom are deemed to fall within the expected perimeters of the sentence imposed by a court of law. *Brown.*

I conclude that the loss of a prison job for misconduct is not an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. Therefore, Inmate Handbook provisions relating to prison jobs do not create rights enforceable in court. Because there is no set of facts which Inmate could plead to cure this problem, I discern no error in the trial court sustaining the preliminary objection and dismissing this claim.

### 2. Retaliation

The majority also concludes that Inmate stated a claim for retaliation because he was warned to stop filing grievances if he wanted cell searches to stop. I respectfully disagree.

To state a retaliation claim, an inmate must allege that he engaged in constitutionally protected conduct, that prison officials took adverse action and that the protected conduct was a substantial or motivating factor for the action. *Yount v. Dep't of Corr.,* 600 Pa. 418, 966 A.2d 1115 (2009). Adverse action is one which is sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Id.*

Accepting as true the well-pleaded averments of Inmate's complaint, it is clear that the cell searches referenced by Inmate did not amount to adverse action as a matter of fact. This is because Inmate was not deterred from exercising his right to file grievances; rather, he continued to file them.

Moreover, I conclude that cell searches are not an "adverse action" as a matter of law. This is because inmates are aware that they and their cells may be subject to searches. Inmate Handbook § II(D). Indeed, the Fourth Amendment provides no protection for inmates against searches and seizures in their cells. *Hudson v. Palmer,* 468 U.S. 517, 525–26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell"); *Thomas v. Holtz,* 707 A.2d 569 (Pa. Cmwlth.1998) (Pellegrini, Kelley, JJ., & Narick, S.J.) (prisoner has no reasonable expectation of privacy in his prison cell entitling him to protection against unreasonable searches; imprisonment carries with it the loss of many rights as being necessary to accommodate the institutional objective of prison facilities); *Johnson v. Desmond,* 441 Pa.Super. 632, 658 A.2d 375

(1995) (inmate had no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment); *see Willis v. Artuz,* 301 F.3d 65 (2d Cir. 2002) (an inmate does not have a legitimate expectation of privacy in his prison cell); *Booth v. King,* 346 F.Supp.2d 751 (E.D.Pa.2004) (same); *DeBlasio v. Pignoli,* 918 A.2d 822 (Pa.Cmwlth.2007) (Simpson, J.) (same); *Commonwealth v. Rathfon,* 705 A.2d 448 (Pa.Super.1997); *Dep't of Pub. Welfare, Farview State Hosp. v. Kallinger,* 134 Pa.Cmwlth. 415, 580 A.2d 887 (1990) (Pellegrini, J.) (same); *Commonwealth v. Boyd,* 397 Pa.Super. 468, 580 A.2d 393 (1990) (same). In other words, an "adverse action" does not include cell searches, which are necessary to accommodate the institutional objective of prison facilities. *Thomas.*

Based on the discussion above, I would affirm the trial court sustaining preliminary objections and dismissing Inmate's compliant with prejudice.