| | | |
|---|---|---|
| Wayne Prater, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Department of Correction - | : | |
| [D.O.C.], John E. Wetzel - Secretary of | : | |
| Corrections, Dorina Varner – Chief | : | |
| Grievance Officer, Keri Moore - Chief | : | |
| Grievance Officer, Barry Smith - | : | |
| Superintendent at SCI Houtzdale - [Super], | : | |
| Rebecca Reifer - Grievance Officer at SCI | : | |
| Houtzdale [G/C], M. Ivicic - Corrections | : | |
| Classification & Program Manager | : | |
| [CCPM], Susan McQuillen - Corrections | : | |
| Employment Vocational Coordinator | : | |
| [CEVC], Joel Barrows - Major at SCI | : | |
| Houtzdale, Mr. Norvell – Maintenance | : | |
| Supervisor at SCI Houtzdale [M/S], | : | |
| Mr. Kuhn - Carpenter at SCI Houtzdale | : | |
| [Car], Crystal Loy - Unit Manager at SCI | : | |
| Houtzdale [U/M], Rodney McBride - Unit | : | |
| Counselor at SCI Houtzdale [U/C], | : | |
| Stewart - Sergent at SCI Houtzdale - [Sgt.], | : | No. 392 M.D. 2018 |
| Respondents | : | Submitted: March 29, 2019 |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                         FILED:  July 10, 2019


Before this Court are the Pennsylvania Department of Corrections'
(Department) Secretary John Wetzel (Wetzel), Chief Grievance Officer Dorina
Varner (Varner), Grievance Officer Keri Moore (Moore), State Correctional

Institution (SCI) Houtzdale's (Houtzdale) Superintendent Barry Smith (Smith), Superintendent's Assistant and Facility Grievance Coordinator Rebecca Reifer (Reifer), Corrections Classification Program Manager M. Ivicic (Ivicic), Corrections Employment Vocational Coordinator Susan McQuillen (McQuillen), Major Joel Barrows (Barrows), Maintenance Supervisor Norvell (Norvell), Carpenter Kuhn (Kuhn), Unit Manager Crystal Loy (Loy), Unit Counselor Rodney McBride (McBride) and Sergeant Stewarts' (collectively, Respondents) preliminary objections (Preliminary Objections) to Wayne Prater's (Prater or Petitioner) pro se petition for review (Petition) filed in this Court's original jurisdiction. After review, we sustain Respondents' first Preliminary Objection (PO) and, this Court lacking jurisdiction, transfer the matter to the Clearfield County Common Pleas Court.

On May 31, 2018, Prater filed the Petition, wherein he alleges that, while working in the maintenance department at SCI Houtzdale on March 1, 2018, he engaged in conversation with three white inmate coworkers about institutions going into lockdown and wasting money. According to Prater, during that conversation, he stated that "the state always finds a way not to work." Petition ¶ 3 (emphasis omitted). Prater avers, after making that statement, Kuhn told Prater that he "will never work for [Kuhn] again." Petition ¶ 4 (emphasis omitted). Prater alleges when he left the maintenance department that day, Kuhn subjected him to a "hostile pat search[.]" Petition ¶ 8. Prater further describes that he reported to his work detail the next day, but Norvell informed him he was wanted back in his housing unit. Upon his return thereto, Prater was advised no one had requested his return. According to Prater, he returned to the job site where Norvell again told him he was wanted in the housing unit, but Prater explained to Norvell that the housing unit officers denied calling for him, and Prater asked Norvell if he was fired. Norvell informed him he was not fired, but was not working that day, and to return to his housing unit. On March 2, 2018, Prater filed Grievance No. 724097, alleging he was subjected to racial

2

discrimination in his interactions with Norvell and Kuhn, and complaining of an unlawful racially discriminatory culture in the maintenance department. He further avers he was later directed to report to the Security Office where he was informed he was being investigated concerning his March 1, 2018 statement. Notwithstanding, Prater acknowledges he was not given a misconduct report for the statement.

Prater contends that on March 15, 2018, Grievance No. 724097 was denied as frivolous, that he appealed from that denial to Smith, and that Smith denied his appeal. According to Prater, less than one week later, on March 28, 2018, during his morning meal, Smith told Prater, "I will show you how big my balls are." Petition ¶ 21 (emphasis omitted). Prater alleges that he perceived the statement as a boast that Smith could do as he wished without repercussion. On that same date, Prater allegedly reported for work, but was told to return to his housing unit, whereby Loy and McBride informed him he had been removed from his job in the maintenance department and had been assigned to work kitchen detail. Prater avers that he told Loy to remove him from kitchen detail, but that his request was ignored. Prater asserts that Loy conducted a Unit Manager Team meeting on March 28, 2018, to remove him from his job assignment, but that he was given no reason for his removal. Prater also describes that, on that same date, he received a job assignment orientation notice informing him to report to the culinary department for a work assignment. That day, Prater submitted two Department DC-135 Forms (DC-135 form)[1] – one to Smith, objecting to his March 28, 2018 statement, and the other to McQuillen requesting that the job change be postponed pending resolution of his challenges to the change. According to Prater, on March 31, 2018, he also filed an abuse and retaliation complaint via the Prison Rape Elimination Act (PREA)[2] hotline against Smith "for his actions and statement to [Prater]." Petition ¶ 28.

---

[1] A DC-135 form is an Inmate's Request to a Staff Member.
[2] The PREA is now codified at 34 U.S.C. §§ 30301-30309.

Prater represents that, on April 3, 2018, McQuillen responded to the DC-135 form stating: "[A]ddress to . . . Smith[.]" Petition ¶ 29. Prater further asserts that, since Smith had not responded to the first DC-135 form, on April 5, 2018, he sent Smith another one. On April 9, 2018, Smith denied having received the March 28, 2018 DC-135 form.

According to Prater, despite having requested on March 28, 2018 that he be removed from all jobs until his grievance was resolved, on April 9, 2018, he received a misconduct report for failing to report to kitchen work detail. At an April 16, 2018 hearing on the misconduct report, Prater was given a reprimand and again assigned to kitchen detail. On April 17, 2018, Prater filed another complaint against Smith via the PREA hotline for Smith's March 28, 2018 statement. On April 19, 2018, Prater was called to the Security Office to make a written report of his complaint. On April 24, 2018, Prater received another misconduct for failing to report to his kitchen work detail. Also on April 24, 2018, Prater sent a DC-135 form to Barrows contending that Loy was not doing her job correctly, and that he had improperly received two misconducts. On April 26, 2018, Prater filed Grievance No. 733589, complaining that Loy had failed to remove him from all jobs, that McQuillen had ignored his job change request and that Prater had sent a DC-135 form to Barrows and that Loy's refusal to grant his request resulted in two misconducts. Barrows denied Grievance No. 733589 on May 3, 2018.

Prater contends that because Barrows was named in the grievance, Barrows violated Inmate Grievance Policy DC-ADM 804 by responding thereto. Further, he asserts that Respondents failed to comply with this Court's precedent. He seeks money damages and equitable relief.

On July 17, 2018, Respondents filed the Preliminary Objections averring that this Court lacks jurisdiction over this matter, that the Petition fails to conform to

4

the Pennsylvania Rules of Civil Procedure, and that the Petition fails to state a claim for which relief may be granted.[3]

Regarding Respondents' first Preliminary Objection that this Court lacks jurisdiction, the Pennsylvania Supreme Court has explained:

> The Commonwealth Court has original jurisdiction in only a narrow class of cases. That class is defined by Section 761 of the Judicial Code, 42 Pa.C.S. § 761, which provides that, as a general rule, the court has original jurisdiction in cases asserted against 'the Commonwealth government, including any officer thereof, acting in his official capacity.' 42 Pa.C.S. § 761(a)(1). This general rule is subject to certain enumerated exceptions, the critical one for present purposes being that the Commonwealth Court does not generally have original jurisdiction over
>
>> actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.
>
> 42 Pa.C.S. § 761(a)(1)(v). Nevertheless, '[t]o the extent prescribed by general rule,' the Commonwealth Court retains ancillary jurisdiction 'over any claim or other matter which is related to a claim or other matter otherwise within its exclusive original jurisdiction.' 42 Pa.C.S. § 761(c). Furthermore, where the Commonwealth Court retains original jurisdiction pursuant to Section 761(a) [of the Judicial Code], such jurisdiction is exclusive. *See* 42 Pa.C.S. § 761(b).

---

[3] This Court has stated:

> In reviewing preliminary objections, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. 'Preliminary objections should be sustained only in cases that are clear and free from doubt.' *P*[*a.*] *AFL-CIO v. Commonwealth*, . . . 757 A.2d 917, 920 ([Pa.] 2000).

*Seitel Data, Ltd. v. Ctr. Twp.*, 92 A.3d 851, 859 (Pa. Cmwlth. 2014) (citations omitted).

5

*Stackhouse v. Pa. State Police*, 832 A.2d 1004, 1007 (Pa. 2003).

> Accordingly,

> this Court lacks original jurisdiction over tort actions for money damages that are premised on either common law trespass or a civil action for deprivation of civil rights under [Section 1983 of the United States Code,] 42 U.S.C. § 1983 [(Section 1983)]. *Hill v. P[a.] Dep[’t] of Env[tl.] Prot[.],* . . . 679 A.2d 773 ([Pa.] 1996); *Fawber v. Cohen,* . . . 532 A.2d 429 ([Pa.] 1987); *Balshy v. Rank,* . . . 490 A.2d 415 ([Pa.] 1985).

*Miles v. Beard*, 847 A.2d 161, 164 (Pa. Cmwlth. 2004).

In *Miles*, an inmate submitted a request to the Chaplaincy Program Director at the SCI for kosher meals and filed a grievance when he did not receive approval. Because he did not receive a response to his grievance for over seven months, the inmate filed a complaint in common pleas court seeking an order directing that he receive kosher meals, and also compensatory and punitive damages, and declaratory and injunctive relief. The common pleas court dismissed the action, *sua sponte*, concluding, *inter alia*, that it lacked original jurisdiction. On appeal, this Court considered whether jurisdiction was properly in this Court, or in the common pleas court. The *Miles* Court reasoned:

> In *Stackhouse* . . . the plaintiff sought injunctive relief *in addition to* money damages. In that case Diane Stackhouse filed suit against the Pennsylvania State Police (State Police), Commissioner Paul J. Evanko and Deputy Commissioner Thomas K. Coury. She alleged that employees of the State Police had undertaken an investigation of her in connection with a job application she had filed. She asserted, specifically, that certain State Police employees were permitted to delve improperly into her personal affairs, including her private inter-personal relationships. She did not allege that the two individuals named as defendants had personally inquired into private matters; she merely contended that they had failed to insure that those who did conduct the investigation were properly trained to inquire only into matters that were appropriate

6

and relevant to it. She also alleged that after she informed Commissioner Evanko of what had occurred, he did not take any corrective action. She sought both declaratory/injunctive relief and monetary damages. The defendants filed a preliminary objection asserting that original jurisdiction was with this Court. The common pleas court agreed and transferred the matter. Thereafter, [this Court] filed a per curiam order dismissing the case, citing *Fawber*, *Balshy* and *Hill*. The matter was then appealed to the Supreme Court. It noted that the equity cause of action rested upon the same factual allegations as the tort claims for defamation and invasion of privacy. The Court held that, in such a circumstance, the inclusion of a count of declaratory or injunctive relief does not operate to transform the matter into the type of case envisioned by, *inter alia*, Section 761 of the Judicial Code. Further, it noted that were it to conclude otherwise, the result would be to permit a jurisdictional determination to turn 'solely on the styling of claims within a complaint' and this would 'arguably permit forum shopping through pleading.' [*Stackhouse*], 832 A.2d at 1008. In addition, it observed that traditionally this Court and others have determined jurisdictional questions based upon *substance*, rather than on the form of the action. It, thus, concluded that the matter had properly been filed in the common pleas court.

Here, as in *Stackhouse*, the allegation upon which the equity and [Section] 1983 actions rest are clearly the same. . . . Accordingly, [this Court] conclude[s] that *Stackhouse* controls here.

*Miles*, 847 A.2d at 164-65. The *Miles* Court further addressed the impact of the petitioner's requests for injunctive relief, on its jurisdiction.

Additionally, although one might argue that what [the petitioner] really wants is a mandatory injunction rather than money damages, *he* is the one who included a request for money damages in his complaint. It is not our function to ignore a portion of his request for relief so that original jurisdiction can be vested in this Court, a court of limited original jurisdiction, rather than in the common pleas court, a court of broad original jurisdiction. Indeed, such an approach is clearly contrary to the holding in *Stackhouse* and to the spirit of Supreme Court cases such as *Gossman v.*

7

*Lower Chanceford Township Board of Supervisors*, . . . 469 A.2d 996 ([Pa.] 1983), which caution that in determining whether this Court has original jurisdiction over a matter, we must consider that cases within our original jurisdiction are appealable *as of right* to the Supreme Court, and the efficient administration of justice is not well served when that Court is forced to hear collateral matters (in *Gossman*, an issue concerning further costs and counsel fees) because 'such an interpretation of [its] jurisdiction would crowd cases involving important and unique issues from [its] allocatur docket.' *Id*. at . . . 998. While we certainly admit that the appeal *sub judice* does not concern a collateral matter, we are not convinced that where, as here, the plaintiff seeks, *inter alia*, money damages in a [Section] 1983 type of claim, this matter cannot be adequately addressed without **mandatory** review by the Supreme Court. Accordingly, we hold that jurisdiction was properly vested in the common pleas court on this basis as well.

*Miles*, 847 A.2d at 165.

The instant matter is similar to *Miles*. Despite Prater's contention that he seeks review of his grievance denial, he alleges that the objectionable actions (the underlying removal from his job, and the grievance denial) were due to unlawful racial discrimination and retaliation.[4] Prater seeks both monetary damages and equitable relief.[5]

---

[4] Although Prater does not allege with respect to his racial discrimination claims that Respondents violated Section 1983, such is not required, since "a plaintiff filing a complaint in the courts of this Commonwealth is not required to specify the legal theory or theories underlying the complaint. He or she may merely allege the material facts which form the basis of a cause of action." *Heinly v. Commonwealth*, 621 A.2d 1212, 1215 n.5 (Pa. Cmwlth. 1993).

[5] In his Petition, Prater requests the following relief:

> 78.) Petit[i]oner request[s] monetary damages in the amount as follows:
>
> a.) For all contacted parties and acting parties $15,000 each.
>
> b.) For [Wetzel] ignoring correspondence and ignoring presented issue $50,000.

8

Specifically, after describing the alleged incidents underlying his claim, Prater avers:

> 45.) All Respondents have no regards for any rules and regulations in place that governs it's [sic] authority, making all actions deliberate and with malicious intent.
>
> 46.) To present date[,] no administration has addressed or mentioned what statement was made by Petitioner that was inappropriate, illegal, or violated [Department] rules/policies, which would warrant job removal or any actions received by Petitioner.
>
> 47.) All actions done to Petitioner call's [sic] into question all procedural violations being done by all Respondent's [sic] requiring a [sic] inquiry into the illegal actions being done.

---

> c.) For [Smith] for his retaliatory act and statement $200,000, for each issue.
>
> d.) Petitioner request[s] that all SCI Houtzdale administration that was contacted by DC-135 [form] . . . to be held in contempt and given a two step demotion in job position.
>
> e.) Petit[i]oner request[s] all back pay from [March 28, 2018] and placed back on job [labor crew].
>
> f.) Petitioner request[s] that the [w]hite [s]upremacist culture within SCI Houtzdale be investigated and corrected.
>
> g.) Petitioner request[s] that [Loy] be demoted and sanctioned to $15,000, for her continuous changing statements on paperwork and not follow[ing] polices.
>
> h.) Petitioner request[s] that the court demand the two Chief Grievance officer[s] – [Varner and Moore] be removed from [their] position[s] and sanctioned $50,000, each for ignoring pol[i]cy violations.
>
> i.) Petitioner request[s] that the court sanction all listed parties as it deems fit and grant Petitioner his requested relief.

Petition at 14-15.

Petition at 7.

Prater further asserts:

48.) Petitioner is a [b]lack inmate that was racially discriminated against by the all white administration within [the m]aintenance [d]epartment. Petitioner grieved the matter and was removed from work detail after [he] filed [the] grievance. There was an [sic] conversation about thr [sic] continuous lockdowns at SCI Houtzdale, the state wasting money, and the statewide lockdown due to funeral of Sgt. at SCI Summerset [sic].

49.) There was [sic] 4 inmates, 1 [b]lack (Petitioner) and 3 [w]hite inmates that all made statements in conversation with [P]etitioner being the only one to lose his job. It's clear it was racially motivated, due too [sic] the three [w]hite inmates were never questioned or sent to [the] Security Office. If there are 4 inmates having the same conversation and the only [b]lack inmate (Petitioner) was singaled [sic] out then fired, the only factor is his race. If there was any kind of inappropriate statement made, why was statement never addressed or listed?

50.) What makes this matter more egregious is that Petitioner never received any misconduct report (DC-141) or any reason why he was removed from [his] job. **Respondents['] actions are arbitrary, capricious, and retaliatory denying Petitioner the rights due by the governing laws that gives [sic] [] Respondents the authority to remove an inmate from any job.**

51.) To show the arrogance of [Smith] at SCI Houtzdale, he states to Petitioner – '*I will show you how big my balls are!*[,'] clearly sending a message that – I can do what I want without any repercussions for his actions. **This clearly is an abuse of power that [t]his Honorable Court, can show there are repercussions for law violations by [the Department] [a]dministration that has [n]o [r]espect for the rules & regulations that governs it's [sic] position of authority.**

Petition at 8-9 (bold emphasis added).  Prater further argues: "SCI Houtzdale administration continues to violate state law, **without being held accountable for [its] illegal actions.**"  Petition at 10, ¶ 55 (emphasis added).

Notably, Prater's Petition contains two counts.  In the first Count, Prater provides: "[] Respondents['] acts, policies, and practices . . . are deliberately [sic] with malice by intentionally misinterpreting or misconstruing" the relevant Department policy for the purpose of removing Prater from his prison job for reasons other than misconduct.  Petition at 12, ¶ 68.  Therein, Prater further alleges: "Respondents['] actions constitute abuse of power, bad faith and willful misconduct by utilizing [the Department's] policy in a capriciously [sic] manner as the means to circumvent" Department Regulations and the Department's policy providing due process procedures.  *Id*. at 12, ¶ 69.  Further, according to Prater, Respondents' "action[s] w[ere] the **p[r]oximate cause** that resulted in Petitioner[']s job removal, without notice, [and a] full hearing on [the] subject and denial of right to appeal [the] decision."[6]  *Id*. (emphasis added).

In the Petition's second count, Prater asserts that Respondents' "arbitrary and capricious refusal to abide by and enforce" the relevant Department Regulations and policies deprived him of due process, violated the holdings of *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010), and *Williams v. Wetzel*, 178 A.3d 920 (Pa. Cmwlth. 2018),[7] and "punished [him] for filing a grievance and sanctioned [him with] job

---

[6] Notably, proximate cause is a tort liability concept.  *See Commonwealth ex rel. Smith v. Myers*, 261 A.2d 550 (Pa. 1970).

[7]     This Court has previously held that 'before [the Department] can impose any sanction, it must follow the procedure set forth in [Section 93.10(b) of the Department's Regulations,] [37 Pa. Code § 93.10(b)].' *Bush*, 1 A.3d at 984.  In *Bush*, [the Department] removed an inmate from his job in the prison's kitchen after [the Department] caught the inmate stealing food from the kitchen.  [The Department] informed the inmate that his misconduct resulted in a Class II charge, and, as a sanction, [the Department] removed the inmate from his work

removal for exercising a protected right [where he did not] receiv[e] a misconduct report [and was not] given[ ] any reason for job removal[.]" Petition at 12, ¶ 70. According to Prater, such action "constitut[es] an abuse of power, bad faith, willful misconduct, and retaliation by Respondents." *Id.*

Prater alleges that the actions taken against him (*i.e.*, the loss of his job and the denial of his grievance) were based on unlawful discrimination and retaliation. Prater's Petition is less a grievance appeal than it is a civil action for deprivation of civil rights. As in *Miles*:

> [T]he allegation[s] upon which the equity and [Section] 1983 actions rest are clearly the same. . . . Accordingly, we conclude that *Stackhouse* controls here.
>
> Additionally, although one might argue that what [Prater] really wants is a mandatory injunction rather than money damages, ***he*** is the one who included a request for money damages in his complaint. It is not our function to ignore a portion of his request for relief so that original jurisdiction can be vested in this Court, a court of limited original jurisdiction, rather than in the common pleas court, a court of broad original jurisdiction.

*Miles*, 847 A.2d at 165. Accordingly, this Court does not have jurisdiction over the instant matter.[8] Notwithstanding, Section 5103(a) of the Judicial Code, 42 Pa.C.S. §

---

> assignment. [The Department] removed the inmate without first providing written notice, a hearing before an impartial hearing examiner, an opportunity to present evidence, and a written decision or an opportunity to appeal. The inmate filed an action against [the Department] employees, claiming a violation of his due process rights. Upon review, although [this Court] determined there to be no due process violation, [this Court] nonetheless conclude[s] that the inmate sufficiently alleged a cause of action for a violation of his rights established by [Department R]egulations . . . , 37 Pa. Code § 93.10(b).

*Williams*, 178 A.3d at 924 (citations omitted).

[8] Since this Court has determined it does not have jurisdiction, it may not address the parties' substantive arguments.

12

5103(a), provides that this Court shall not dismiss an erroneously filed matter for lack of jurisdiction, but shall transfer the case to the proper tribunal. Because Prater's action is based upon alleged incidents occurring in Clearfield County, this Court shall transfer the matter to the Clearfield County Common Pleas Court.

For all of the above reasons, Respondents' first Preliminary Objection is sustained, and the action is transferred to the Clearfield County Common Pleas Court for disposition of the remaining Preliminary Objections.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Prater, :
                   Petitioner :
                                   :

                   v. :
                                   :

Pennsylvania Department of Correction - :
[D.O.C.], John E. Wetzel - Secretary of :
Corrections, Dorina Varner – Chief :
Grievance Officer, Keri Moore - Chief :
Grievance Officer, Barry Smith - :
Superintendent at SCI Houtzdale - [Super], :
Rebecca Reifer - Grievance Officer at SCI :
Houtzdale [G/C], M. Ivicic - Corrections :
Classification & Program Manager :
[CCPM], Susan McQuillen - Corrections :
Employment Vocational Coordinator :
[CEVC], Joel Barrows - Major at SCI :
Houtzdale, Mr. Norvell – Maintenance :
Supervisor at SCI Houtzdale [M/S], :
Mr. Kuhn - Carpenter at SCI Houtzdale :
[Car], Crystal Loy - Unit Manager at SCI :
Houtzdale [U/M], Rodney McBride - Unit :
Counselor at SCI Houtzdale [U/C], :
Stewart - Sergent at SCI Houtzdale - [Sgt.], :     No. 392 M.D. 2018
                    Respondents :

## O R D E R

AND NOW, this 10th day of July, 2019, Pennsylvania Department of Corrections' Secretary John Wetzel, Chief Grievance Officer Dorina Varner, Grievance Officer Keri Moore, State Correctional Institution Houtzdale's Superintendent Barry Smith, Superintendent's Assistant and Facility Grievance Coordinator Rebecca Reifer, Corrections Classification Program Manager M. Ivicic, Corrections Employment Vocational Coordinator Susan McQuillen, Major Joel Barrows, Maintenance Supervisor Norvell, Carpenter Kuhn, Unit Manager Crystal

Loy, Unit Counselor Rodney McBride and Sergeant Stewarts' first Preliminary Objection to Wayne Prater's pro se petition for review is sustained, and this matter is transferred to the Clearfield County Common Pleas Court for disposition of the remaining Preliminary Objections.


_____
ANNE E. COVEY, Judge