# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric X. Rambert, : 
                Petitioner : 
         : 
         v. : No. 11 M.D. 2021
         : Submitted: October 15, 2021
John E. Wetzel, Secretary, : 
                Respondent : 


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: April 18, 2022**

Presently before the Court in our original jurisdiction are the preliminary objections (POs) in the nature of demurrers filed by John E. Wetzel, Secretary (Wetzel), to Eric X. Rambert's (Rambert) pro se Petition for a Writ of Mandamus (Petition), which challenges Rambert's placement on the restricted release list (RRL) without due process and seeks to compel Wetzel to release Rambert from RRL status and place Rambert into the general prison population. After careful review, we sustain Wetzel's PO based on the lack of allegations regarding Wetzel's personal involvement, thereby requiring his dismissal from this litigation. We, therefore, dismiss the Petition and dismiss Wetzel's remaining POs as moot.

As an initial matter, we note that "[m]andamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

where there is a clear legal right in the [petitioner], a corresponding duty in the [respondent], and want of any other appropriate or adequate remedy." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1107-08 (Pa. 2007) (quotation omitted). Mandamus is not used to establish legal rights, but to enforce rights that are "already established beyond peradventure." *Lawrence v. Pa. Dep't of Corr.*, 941 A.2d 70, 72 (Pa. Cmwlth. 2007). Mandamus will not lie to "direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken." *Chanceford Aviation Props.*, 923 A.2d at 1108. Mandamus may be used "to compel a tribunal or administrative agency to act when that tribunal or agency has been sitting on its hands." *Id.* (internal quotation marks omitted).

When ruling on preliminary objections in the nature of a demurrer, this Court must accept all well-pleaded factual allegations in the petition for review as true, along with any reasonable inferences deducible therefrom. *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). The Court is not bound, however, "by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* Preliminary objections should be sustained only where it "appear[s] with certainty that the law will not permit recovery and any doubt should be resolved by a refusal to sustain them." *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003).

## I. BACKGROUND

### A. The Petition

On January 15, 2021, Rambert filed the Petition,[2] in which he avers the

---

[2] Rambert also filed an application to proceed *in forma pauperis*, which was granted by order dated February 2, 2021. Thereafter, on March 1, 2021, Wetzel filed a motion to revoke Rambert's *in forma pauperis* status due to Rambert's history as an abusive litigator, to which

following. On March 6, 2016, Rambert, while an inmate at State Correctional Institution (SCI)-Forest, was placed on the RRL and subsequently subjected to administrative custody and solitary confinement without being provided due process in order for him to raise objections to or challenge his placement. (Petition ¶¶ 1-3.) Inmates who are in solitary confinement based on their RRL status are supposed to receive annual reviews, but such reviews do not include an interview by Wetzel. (*Id.* ¶ 1.) Rambert spent five years and five months in long-term segregation "for a basic prison infraction that [one] wo[uld not] find any other RRL prisoners being held for [sic]." (*Id.* ¶ 2.) Rambert contends that, due to his exemplary behavior while serving in disciplinary custody and administrative custody at SCI-Forest, he received, among other things, two monthly phone calls, two hours of exercise per day, and a television. (*Id.* ¶ 4.) Rambert was transferred from SCI-Forest to SCI-Fayette on December 3, 2017; however, Rambert rode the normal prison transfer bus to SCI-Benner Township in doing so,[3] which would be contrary to his RRL status. (*Id.*) When Rambert arrived at SCI-Fayette, he avers that he should have been released into the general population but was, instead, placed in the Special Management Unit (SMU). (*Id.*)

While Rambert was at SCI-Fayette, he was selected for participation in the Department of Corrections' (Department) voluntary pilot "PORTAL PROGRAM" (Program). (*Id.* ¶ 5.) Rambert was not interested in participating at first but later accepted the offer after being told that he would be released from the RRL and placed in the general prison population of an SCI of his choice upon completion of the Program. (*Id.*) On July 7, 2019, Rambert was transferred to SCI-Pine Grove to start

Rambert filed an unresponsive answer. The Court granted Wetzel relief on March 24, 2021, and ordered Rambert to pay the filing fee, which he has.

[3] Although the Petition states "SCI-Bender," the SCI to which Rambert refers is SCI-Benner Township.

3

the Program. (*Id.* ¶ 6.) Participation in the Program occurred in phases and encompassed completing assigned programming while exhibiting appropriate behavior prior to being transferred to a step-down unit for eventual reintegration to the general population. (*Id.*) Rambert was in the Program for 16 months and successfully completed many of the Program's requirements. (*Id.*) Rambert's progress reports, completed by a counselor, unit manager, and a member of the psychology staff, and weekly assessments reflected that Rambert had made positive progress in the individual goals that had been established for him. (*Id.* ¶¶ 6-7.) On October 13, 2020, Rambert went before the SCI-Pine Grove Program Review Committee and PORTAL Team, which told him that the Program may be moving but would continue and that his next review would be on January 12, 2021. (*Id.* ¶ 8.)

Rambert avers that on November 4, 2020, he was transferred from SCI-Pine Grove to SCI-Greene, where he had been housed between 1998 and 2000. Rambert and the other Program inmates were "kidnapped, physically bounded[,] [] psychologically blind folded[,] and shuffled out by the MAGA BOOGALOO, PROUD BOYS DOC CERT TEAM." (*Id.* ¶ 9[4] (emphasis in original).) Rambert alleged that, during his prior time at SCI-Greene, he "had experienced physical and mental atrocities until he was transferred" to another SCI in October 2000. (*Id.*) On November 12, 2020, Rambert was told by two SCI-Greene officials that the Program had ended and that he and other Program inmates would be placed on the long-term segregation unit "with no end or set time for release." (*Id.* (emphasis omitted).) Rambert claimed that such action was an "arbitrary and capricious throw[]back of corporal cruel and unusual punishment." (*Id.* (emphasis omitted).)

Rambert avers that he had completed enough of the Program at SCI-Pine

---

[4] The Petition contains two paragraph 9s. For ease, we refer to the second as 9(2).

4

Grove to ensure his transfer to a step-down program and ultimately the general population, as evidenced by his participation in a variety of activities, ability to use facilities available to the general prison population, and ability to obtain property that would not otherwise be available to someone on the RRL. (*Id.* ¶ 9(2).) Rambert contends "he deserves to be released from the . . . RRL[] [and] out of solitary confinement because he spent (16) straight months of good behavior and as the staff stated [he was] a model prisoner." (*Id.* ¶ 10 (emphasis omitted).)

Rambert further avers that, instead of being released from the RRL, he was returned to SCI-Greene in or around November 2020, where he has been placed in a unit with inmates who suffer from mental illness but who are not properly diagnosed. (*Id.* ¶¶ 9-10.) In this unit, Rambert alleges that he has been exposed to COVID-19 outbreaks, saliva spitting, feces, "urine throwers," banging of metal fixtures, and screaming throughout the day and night, all of which is "advocated by MAGA[-]minded Boogaloo Proud Boys guised [sic] as Corrections." (*Id.* ¶ 10.) In addition, Rambert has been deprived of the privileges that he had earned at other facilities, such as exercise opportunities, phone calls, cable television, and personal property storage. (*Id.*) Rambert avers other deficiencies in SCI-Greene's facilities, including shower size, a makeshift law library, and inadequate cell amenities. Rambert further alleges that SCI-Greene's workers are placing inmates with mental illness next to each other to "disrupt the whole unit's sleep and concentration all[] day" and are not providing Rambert with proper medical treatment for a long-term chronic condition for which he had been receiving treatment. (*Id.* ¶ 11.)

Based on these allegations, Rambert avers that "Wetzel owes [Rambert] a duty to release [Rambert] from solitary confinement to an eastern region facility because [Rambert] has shown exemplary behavior for well over 14 years and 6 months." (*Id.*

5

¶ 12 (emphasis omitted).) Rambert maintains: (1) that he should, at a minimum, be transferred to another facility because he was concerned for his safety at SCI-Greene; and (2) that the officials there were tampering with his mail. (*Id.*) As relief, Rambert seeks an order from the Court finding that he was not provided with sufficient due process prior to being added to the RRL in March 2016 and compelling Wetzel to release Rambert to the general population consistent with how other inmates who completed the Program were treated. (*Id.*, Wherefore Clause.)

### B. The POs

Wetzel filed POs to the Petition, asserting multiple reasons why the Petition should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4), Pa.R.Civ.P. 1028(a)(4), as legally insufficient. Wetzel argues that the Petition does not make any factual averments reflecting that Wetzel was personally involved or acquiesced in any of the alleged incidents, and Wetzel cannot be held vicariously liable for the actions of subordinate employees. (POs ¶¶ 45-46.) As such, Wetzel argues that he should be dismissed from this action. (*Id.* ¶¶ 45, 49-51.)[5] Rambert filed an Answer to the POs, averring new facts that he believes would support his claims and new allegations regarding his treatment at SCI-Greene.[6] He further

---

[5] Wetzel also asserts additional POs. He asserts that: the Petition is time barred because it was not filed within two years of March 6, 2016, the date Rambert was placed on the RRL, (POs ¶¶ 38-41); the due process claims are legally insufficient because Rambert does not have a protected liberty interest to be housed at any particular custody level, (*id.* ¶¶ 54-56); the claims based on ending the Program are not legally cognizable because prison officials have wide discretion in governing internal prison operations, (*id.* ¶¶ 59-60); the Petition contravenes the principle of judicial restraint into prison operations, (*id.* ¶ 61); and any conditions of confinement claims that can be inferred from the Petition do not rise to violations of the Eighth Amendment to the United States Constitution, U.S. CONST. amend VIII (prohibiting cruel and unusual punishment), (*id.* ¶¶ 64-65, 70-71)

[6] Rambert asserts that "Wetzel's actions and omissions are . . . continuing violations" of previously uncited provisions of the Department's Procedural Manual and tolls the statute of limitations. (Rambert's Answer ¶¶ 4, 10.) Rambert further contends that Wetzel has a duty to

reasserts some of his prior averments in response to Wetzel's POs.

Wetzel filed a brief in support of the POs and Rambert, thereafter, filed a brief in opposition averring numerous new facts. Rambert also asserts, for the first time, that Wetzel has a contractual obligation to place Rambert in the general population, and that Wetzel's failure to abide by that obligation violates due process, and that several other constitutional and rules or regulation violations have occurred.[7] Although Rambert has raised new facts and new claims, in ruling on preliminary objections, we review the well-pleaded allegations **of the Petition**. *Williams*, 178 A.3d at 923. Thus, we will consider only the facts and claims made in the Petition when resolving Wetzel's POs.

## II. DISCUSSION

Although Wetzel asserts multiple reasons for dismissing the Petition, we resolve this matter based on Wetzel's contention that the Petition does not make any factual allegations regarding his "involvement or acquiescence in any of the incidents detailed in the Petition." (Wetzel's Brief at 16.) According to Wetzel, absent allegations of individual wrongdoing, he is immune from suit. Further, Wetzel argues, to the extent Rambert's claims are based on the actions of Wetzel's subordinates, he cannot be held vicariously liable just because those subordinates are in Wetzel's chain of command.

Our Supreme Court has held that a public employee is not vicariously liable

release Rambert to the general population, based on Rambert's participation in the Program, and that Rambert's placement onto the RRL was unlawful. (*Id*. ¶¶ 3, 9, Wherefore Clause.)

[7] Rambert, in his brief, asserts that he is not challenging the due process "of being unlawfully placed on the [RRL,] that [Wetzel] placed him in solitary confinement under mentally declining conditions, or being placed in any particular housing unit[. Rather, he] is challenging [Wetzel's] failure to honor an agreement" regarding the Program. (Rambert's Brief at 21 (emphasis omitted).) However, Rambert later states that his ongoing placement "continues the original RRL placement due process violations." (*Id.* at 24.)

for the actions of subordinates simply because the subordinate is in the employee's chain of command. *DuBree v. Commonwealth*, 393 A.2d 293, 295-96 (Pa. 1978). In civil rights actions, a person's "liability cannot be predicated on the operation of *respondeat superior*" but must be based on personal involvement, which "can be shown through allegations of personal direction or actual knowledge and acquiescence" in the alleged wrong. *Bush v. Veach*, 1 A.3d 981, 986 (Pa. Cmwlth. 2010). Such "allegations must be made with appropriate particularity." *Id.* A public employee's participation in reviewing grievances and grievance appeals does not constitute personal involvement. *Id.* If no personal involvement is averred, the public employee is immune from suit. *DuBree*, 393 A.2d at 296.

A review of the Petition reveals that while it references the particular actions of various Department employees, identified generally by their position and/or by name, it mentions Wetzel in only two paragraphs. Wetzel is first mentioned in paragraph 1, which states the "difference between [d]eath [r]ow prisoners and RRL prisoner[] solitary confinement is RRL is allegedly [r]eviewed [a]nnually with no interview by . . . Wetzel . . . and the [d]ecision [m]aker . . . ." (Petition ¶ 1.) Paragraph 12 "avers that . . . Wetzel owe[s Rambert] a duty to release [Rambert] from solitary confinement to an eastern region facility because [Rambert] has shown exemplary behavior for well over [four] years and [six] months . . . ." (*Id.* ¶ 12 (emphasis omitted).) Such averments fail to establish "personal direction or actual knowledge and acquiescence" in the alleged wrong. *Bush*, 1 A.3d at 986. To show personal involvement by Wetzel, Rambert would need to aver that there was "personal direction or actual knowledge and acquiescence" in any alleged wrongful conduct. *Id.* Thus, because it "appear[s] with certainty that the law will not permit recovery," *Neely*, 838 A.2d at 19 n.4, due to Wetzel being immune based on the lack

8

of allegations of personal involvement, we sustain this PO and dismiss Wetzel from this matter. *DuBree*, 393 A.2d at 295-96; *Bush*, 1 A.3d at 986. As Wetzel is the only respondent named in this matter,[8] we dismiss the Petition.[9]

## III.    CONCLUSION

Based upon the foregoing, Wetzel's PO based on the lack of allegations regarding Wetzel's personal involvement is sustained, and the Petition is dismissed. Wetzel's remaining POs are dismissed as moot.

**RENÉE COHN JUBELIRER,** Judge

---

[8] Naming Wetzel is not sufficient to implicate the Department as a Respondent pursuant to Pennsylvania Rule of Civil Procedure 2102(a)(2), Pa.R.Civ.P. 2102(a)(2), which specifically provides a mechanism for naming the Department as a party, or any other Department official or employee.

[9] Because we dismiss the Petition on this basis, the other POs are moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric X. Rambert,
                         Petitioner

                    v.

John E. Wetzel, Secretary,
                        Respondent

:
:
:
:
:
:
:
:

No. 11 M.D. 2021

## O R D E R

**NOW**, April 18, 2022, the preliminary objections of John E. Wetzel, Secretary, to Eric X. Rambert's Petition for Writ of Mandamus (Petition), seeking to compel his release from the restricted release list and placement into general population, are **SUSTAINED IN PART** and **DISMISSED** as **MOOT IN PART** in accordance with the foregoing opinion.  Accordingly, the Petition is **DISMISSED**.

_____
**RENÉE COHN JUBELIRER,** Judge